HERTZLER v. MANSHUM.

1. NEGLIGENCE—FOOD—POISON IN FOOD—EVIDENCE.
    In an action against a miller and a retailer of flour for
    damages for the illness and death of plaintiff's decedent,
    alleged to have been caused by the negligent presence
    of poison in flour sold by the miller to the retailer and
    by the latter to decedent, the admission of testimony that
    flour sold by defendant miller to another retailer on the
    same day that the flour which caused decedent's illness
    was sold caused illness to those consuming it similar to
    that suffered by decedent, was prejudicial to defendant
    miller, in the absence of proof that the retailer who sold
    it, and who had it in his possession for about two months,
    exercised the highest degree of care to prevent the poison
    from getting into it while in his possession.

2. SAME—EVIDENCE—PROOF OF ANOTHER SALE SHOULD NOT BE
    OFFERED UNLESS FOLLOWED UP AND RENDERED ADMISSIBLE.
    Proof of another sale of flour by defendant retailer,
    where not followed up and rendered admissible, should not
    have been offered and admitted; the danger of error result-
    ing therefrom being apparent, although it was later
    stricken and the jury admonished not to consider it.

3. EVIDENCE—CAUSE OF DEATH — CERTIFICATE OF DEATH PRIMA
    FACIE EVIDENCE.
    Under 2 Comp. Laws 1915, § 5607, the certificate of death
    is *prima facie* evidence of the facts recorded therein when
    the issue is the cause of death.

4. NEGLIGENCE—TRIAL—FINDING JUSTIFIED BY EVIDENCE.
    The finding of the jury that the illness of plaintiff's de-
    cedent was caused by arsenate of lead in flour used in food
    consumed by him, *held*, justified by the evidence.

5. SAME—DEATH—PROXIMATE CAUSE.
    Under evidence connecting decedent's death from pul-
    monary tuberculosis several months later with the illness
    caused by the poison, the jury would be justified in find-

---

[1]Food, 26 C. J. § 103; [2]Id., 26 C. J. § 103; [3]Evidence, 22 C. J.
§ 922; [4]Food, 26 C. J. § 103; [5]Id., 26 C. J. § 103.
    237—Mich.—19.

ing that the poison in the flour was the proximate cause of death, and that responsibility therefor would rest upon the one guilty of negligence in permitting it to be placed therein.

6. TRIAL—INSTRUCTIONS.
    The charge as given relating to the analysis of samples of flour taken from plaintiff's home, *held*, not reversibly erroneous.

Error to Kent; Perkins (Willis B.), J.   Submitted October 21, 1926.   (Docket No. 61.)   Decided January 3, 1927.   Rehearing denied April 1, 1927.

Case by Mae Hertzler, administratrix of the estate of Christian Hertzler, deceased, against Everil J. Manshum and Bessie H. Hanchett for the alleged negligent killing of plaintiff's decedent.   Judgment for plaintiff against defendant Hanchett.   She brings error.   Reversed.

*Phelps & Paley* (*Reed, Rogers & Reed*, of counsel), for appellant.

*William J. Landman* and *Fred P. Geib*, for appellee.

SHARPE, C. J.   This is the second appearance of this case in this court.   When first reviewed, the verdict for defendants was set aside and a new trial granted (228 Mich. 416).   A second trial has been had, resulting in a verdict and judgment in favor of the defendant Manshum and in favor of the plaintiff, and against the defendant Hanchett, in the sum of $5,063.   This latter judgment is here reviewed by writ of error.

Plaintiff was permitted to offer proof that Minnie Blomley, a resident of the city, had purchased a sack of "Pride of the Valley" flour from a merchant named Elenbaas about the 20th day of April, 1919; that this

───────────────

⁶Food, 26 C. J. § 104.

flour was delivered to Elenbaas on the same day the flour purchased by plaintiff's wife was delivered to the defendant Manshum, and that both lots were manufactured at the same time; that Mrs. Blomley and the members of her family were taken ill after partaking of the foodstuffs in which the flour was used, and that the symptoms of their affliction were similar to those displayed by plaintiff and her family. Based on this proof, Dr. Brotherhood, a specialist in medical diagnosis, was permitted to express an opinion that the results following the use of the flour in the Blomley household were due to the presence of arsenate of lead in the food products. Elenbaas was not called, nor was there any proof offered as to the care which had been used in handling the flour while in his store.

On the former trial, Mr. Justice WIEST, speaking for the court said:

"The burden rests upon plaintiff to show that the poison was in the flour when purchased from defendant Manshum. If such fact is established plaintiff will make out a *prima facie* case against both defendants and the burden will shift to defendants to excuse themselves."

Plaintiff's counsel stated that this proof was offered "for the bearing it may have upon the source of contamination of the flour in question in the suit at bar." The flour sold Mrs. Blomley was purchased by Elenbaas in the month of February. It was in his store until about the 20th day of April. Had an action been brought against the appellant for damages sustained by its use, it seems clear, under the proofs offered by it, that recovery could not have been had without proof that Elenbaas exercised the highest degree of care to prevent the poison from getting into the flour while in his possession. The admission of this proof was clearly error. That it was prejudicial to defendant cannot be doubted. Its consideration by the jury naturally resulted in relieving Manshum

from liability.    As the case must go back for a new trial, some of the other assignments will be considered.

Proof was submitted of a sale of flour by Manshum to a Mrs. Mansfield, resulting in the illness of members of her family.    It was afterwards stricken out by consent of plaintiff's counsel.    The danger of the jury, unconsciously, giving consideration to such testimony, although admonished not to do so, is apparent.    Counsel for plaintiff should be informed as to their ability to so follow it up as to make it admissible, and, if not able to do so, should not inject it into the case.

After the cause was at issue the plaintiff died, and it was revived in the name of his administratrix. Before the second trial was had, plaintiff, on motion, was permitted to amend her declaration increasing the *ad damnum* clause and asking for damages claimed to have resulted, not only from the illness of deceased but also because of his death.    He died on July 13, 1922.    For several months prior thereto, he was not under the care of a physician.    During this time he was treated by a chiropractor, and afterwards by a Christian Science healer.    It is plaintiff's claim that the illness resulting from the arsenate of lead poisoning had lowered the vitality of the deceased "so that he fell an easy prey to tuberculosis germs which caused his death, and that therefore the lead poisoning was the producing cause of his death."    The defendant insists that there was no competent proof that tuberculosis was the cause of death, and that "a sufficient causal relation between the alleged poisoning and the alleged death from tuberculosis was not shown and was too remote to make a question for the jury."

As already stated, there was no physician in attendance upon deceased at the time of his death.    The certificate of death was made by the coroner.    It was stated therein that the cause of death was pulmonary tuberculosis.    This certificate is *prima facie* evidence of the facts recorded therein (2 Comp. Laws 1915,

§ 5607) when the issue is the cause of death.   *Harrington* v. *Accident Ass'n*, 232 Mich. 101.

The jury were justified under the evidence in finding that the illness of deceased was caused by the arsenate of lead in the flour used in the preparation of the food consumed by him; that he had theretofore been in good health; that such illness resulted in the lowering of his vitality and the weakening of his powers of resistance to an attack of the tubercular germ; that a tubercular condition became manifest about a year after he was taken ill, and while he was still weak and disabled; that a person in his then condition was liable to contract this disease, and that his death was due thereto.   No new cause was shown to have intervened between his illness and his death. Under these facts, a further finding would be justified that the death of deceased could be traced through successive stages to the poison in the flour, and that the responsibility therefor would rest upon the one guilty of negligence in permitting it to be placed therein.   In other words, that the poison in the flour was the proximate cause of the death of the deceased.   The conclusion reached finds support in the following cases:   *Doherty* v. *Township of Grosse Isle*, 205 Mich. 592; *Tanner* v. *Aluminum Castings Co.*, 210 Mich. 366; *Sjoholm* v. *Hercules Powder Co.*, 227 Mich. 610; *Hovey* v. *General Construction Co.*, 233 Mich. 531; *Ensign* v. *Southern Pacific Co.*, 193 Cal. 311 (223 Pac. 953) ; *San Antonio Public Service Co.* v. *Mitchell* (Tex. Civ. App.), 238 S. W. 265.

We find no reversible error in the charge as given relating to the analysis of the samples of flour taken from plaintiff's home.

The judgment is reversed, with costs to the defendant Hanchett, and a new trial granted.

BIRD, SNOW, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.