# Elsie Black, Appellee, v. The Texas Company, Appellant.

1. APPEAL AND ERROR—*attachment of assignment of errors to record.* Rules of court relative to the writing in, or attaching to, the record the assignments of errors were substantially complied with by the clerk of the lower court inserting the assignment with the parts of the record in a place immediately preceding his certificate of the record, which is the last sheet of the bill of exceptions.

2. APPEAL AND ERROR—*limitation of errors to those assigned and repeated in abstract of record.* Where the appellant sets forth in his abstract of record alleged errors which are not stated in the assignment of error, the Appellate Division will consider only those errors which are specifically enumerated in the assignment of errors and again repeated in the abstract of record.

3. SAVING QUESTIONS FOR REVIEW—*waiver of request for directed verdict by introducing evidence.* A defendant waives the question whether plaintiff's evidence alone tends to support the cause of action by introducing evidence after its motion to direct a verdict at the close of plaintiff's evidence.

4. SAVING QUESTIONS FOR REVIEW—*sufficiency of evidence to support cause of action.* The question whether all the evidence in a case is sufficient to support the plaintiff's cause of action is preserved for review by defendant's motion for a new trial on the ground that the verdict was against the weight of the evidence and assigning error on the overruling of the motion.

5. APPEAL AND ERROR—*presumption that abstract of record includes evidence.* The Appellate Court will presume that all the evidence pertinent to the question whether there is sufficient evidence to support a cause of action has been included in the abstract of record filed by the appellant and the additional abstract of evidence filed by the appellee.

6. EXPLOSIVES AND COMBUSTIBLES—*necessity of proving distributor of kerosene to retailer was agent of producer.* It is incumbent upon one injured by an explosion of kerosene bought from a retailer to prove a distributing company was the agent of defendant, a producing company, under allegations that defendant, by its servant, the distributor, negligently supplied the kerosene to the seller for the retail trade, and, by its servant, represented the kerosene to be reasonably safe for domestic use, etc.

7. MASTER AND SERVANT—*applicability of rule of respondeat superior.* The rule of *respondeat superior* does not apply unless the relationship of master and servant exists and the servant's actions are controlled by the master and are within the scope of his employment.

8. AGENCY—*definition of "agent."* The word "agent" in a general sense applies to persons in the service of, or who perform some acts for, another, but who in a legal sense would not necessarily be the agent of such person and stand in the place of his principal and be his representative.

9. AGENCY—*effect of designating relationship as one of agency.* The fact that parties engaged in an undertaking, or in an agreement, term their relationship as one of agency is not conclusive upon the question whether the legal relationship of principal and agent exists between the parties.

10. EXPLOSIVES AND COMBUSTIBLES—*sufficiency of evidence that distributor of kerosene was agent of producer.* In an action by one injured by an explosion of kerosene bought from a retailer, the evidence was insufficient to establish in a legal sense the existence of the relation of principal and agent between the defendant, a producing company, and a distributing company which supplied the retailer.

11. EXPLOSIVES AND COMBUSTIBLES—*sufficiency of evidence that negligence of producing company was proximate cause of explosion of kerosene.* In an action by one injured by an explosion of kerosene bought from a retailer who was supplied by an alleged distributing company for defendant, a producing company, the evidence did not prove that any negligence of the defendant was the proximate cause, or a causal contributing element, of the explosion.

12. EXPLOSIVES AND COMBUSTIBLES—*verdict for one injured by explosion of kerosene as contrary to evidence.* In an action by one injured by an explosion of kerosene bought from a retailer who was supplied by an alleged distributing company for defendant, a producing company, a verdict for the plaintiff was contrary to the weight of the evidence.

Appeal by defendant from the City Court of East St. Louis; the Hon. SILAS COOK, Judge, presiding. Heard in this court at the October term, 1927. Reversed and remanded. Opinion filed January 20, 1928.

BRYAN, WILLIAMS & CAVE, for appellant.

GEERS & GEERS, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

On January 8, 1927, in the city court of East St. Louis, Elsie Black, the appellee herein, secured a verdict against the appellant awarding to her the sum of

$2,000 as damages for personal injuries sustained by her, resulting, as she alleges, from the negligence of appellant. Counsel for appellee most earnestly insist that there is no assignment of errors written in or attached to the record of the trial court as is required by the rules of this court; also, that the abstract of the record, filed by appellant, is not a complete abstract of the record and does not fully comply with the rules of this court. In the opinion of said counsel these objections are of such a substantial nature as to justify this court in deciding that, owing to such lack of assignment of errors, there is nothing here presented for review, and that this court will not consider the sufficiency of the evidence to support the verdict because there has not been filed by appellant a complete abstract of all the evidence heard in the court below.

An examination of the record discloses that on May 25, 1927, an assignment of errors was filed with the clerk of the lower court which he inserted with the parts of the record in a place immediately preceding his certificate of the record, which is the last sheet of the bill of exceptions. It is our opinion that the rules of this court have been substantially complied with relative to the writing in, or attaching to, the record the assignment of errors.

Appellant does, however, in his abstract of the record set forth alleged errors which are not stated in the assignment of errors attached to the record. The purpose of the assignment of errors is to point out specific errors claimed to have been committed by the court below, and discussion by appellant is limited to the errors enumerated in the assignment of errors and cannot be broadened or increased by setting forth other alleged errors in the abstract of the record. (3 C. J. p. 1328, § 1461.) This court will, therefore, consider only those errors which are specifically enumerated in the assignment of errors and again repeated in the abstract of record.

Appellee contends that the appellant has, by introducing evidence on its own behalf, waived any error it has assigned for the failure of the trial court to direct a verdict for the appellant at the close of the appellee's evidence, and thereby closed to review the question whether all the evidence is sufficient to support the verdict. This point will be next considered before there is a determination if the abstract of the record, prepared by appellant, is sufficient.

In the case of *Voigt v. Anglo-American Provision Co.*, 202 Ill. 462, the Supreme Court has decided that whether the evidence fairly tends to support the plaintiff's cause of action is a question of law, and in *Reavely v. Harris*, 239 Ill. 526, it is further decided that this question is waived if the plaintiff does not make a motion to direct a verdict at the close of plaintiff's evidence and renew this motion at the close of all the evidence. The Supreme Court in the case of *Voigt v. Anglo-American Provision Co., supra,* also points out that whether the verdict is against the weight of evidence is, when properly presented, a question for the decision of the Appellate Court, and the following proposition is laid down in that case: ''Where however, it is alleged that the trial court erred in overruling the motion for a new trial, based on the ground that the verdict was against the weight of the evidence, the Appellate Court is the only tribunal that can correct the error, if any has been committed, and the aggrieved party has the undoubted right to have the decision of that court on the question. Its decision being final on such a question, the duty fully to consider and determine it would seem to be all the more imperative.''

The question whether all the evidence in the case is sufficient to support the plaintiff's cause of action is preserved for review by appellant in its motion for a new trial and in its assignment of errors. Appellant has waived the question whether the plaintiff's evi-

dence alone tends to support the cause of action by introducing evidence after its motion to direct a verdict at the close of plaintiff's evidence (*Knights Templars' & Masons' Life Indemnity Co. v. Crayton,* 209 Ill. 550). However, the question if the verdict is contrary to all the evidence has been preserved for review and this court is bound by law to consider it, provided the abstract of the record complies with the rule of this court.

In this case appellant has filed an abstract of the record containing what purports to be an abstract of the evidence and appellee objects that this abstract of the evidence is not complete. Appellee has filed an additional abstract of the evidence and this court will presume that all the evidence pertinent to the questions presented for review have been included in the abstract of the record filed by the appellant, and the additional abstract of the evidence filed by the appellee. Otherwise the burden would be thrown on the court to search the record and compare it with the abstracts of the evidence filed to ascertain if all the evidence is, in fact, duly abstracted.

The facts in this case as they appear from the evidence are not in dispute and the issuable, or ultimate facts, as now presented to this court, are confined within a narrow compass. Appellee was the mother of Mildred Black who was aged 11 years at the time of the distressing accident hereinafter mentioned. On May 15, 1926, the father of Mildred took her to the hardware store of T. J. Gebauer, located in the town of Troy, Illinois, where kerosene was sold at retail. The girl took a 5-gallon oil can into Gebauer's store and requested that two or three gallons of kerosene be put into the can. Gebauer went to his tank, which was a 60- to 65-gallon galvanized tank which he kept stored in a warehouse about 100 feet back of his store and in which he kept kerosene. Gebauer withdrew two or three gallons of kerosene from his tank and placed it

in the can brought into the store by Mildred Black. The can was taken to the home of the appellee and her husband, in Madison county, and, according to their testimony, the oil can was empty when taken into the hardware store, and was a new can which had only been filled with kerosene once before and at Gebauer's store; and nothing was added to the oil in the can after the kerosene was purchased at Gebauer's store. Some of the kerosene purchased on May 15, 1926, was placed in the lamp of an incubator kept on the Black premises.

On May 25, 1926, Mildred Black was directed by her parents to do the dishes and fill a lamp from the oil can, some of which duties she was performing in the kitchen of her home while her parents were outside of the house engaged in other work. There was a sudden and loud explosion in the kitchen and Mildred, with her clothing in flames, rushed from the house into the yard, and the appellee ran to her assistance and in attempting to extinguish the flames and to remove the clothing of Mildred, the appellee was severely and permanently burned. When appellee left the kitchen only a few minutes before the explosion there was a fire burning briskly in the kitchen stove and the lids were on the stove. The kitchen was very warm and the lamp was on a dresser in the bedroom. After the explosion, the lids were in place on the stove, the dishes stacked on the kitchen table, and the lamp was sitting on the kitchen table, near the edge, with the globe off. The oil can, burned black, was lying on the floor with the spout and bottom blown out. The floor of the kitchen and the furniture were blackened and charred. The glass in the windows and doors was blown out and the draperies and furniture in the sitting room were burned and blackened. The cap of the can was found in Mildred's hand as she lay in the grass in the yard, where she had fallen.

It cannot be disputed that the oil can exploded and no question is made concerning the contributory negli-

gence of the appellee or the girl Mildred, who died eight hours after the explosion and from the injuries received therefrom.

On May 25, 1926, the same day of the explosion, about a quart of the oil was taken from the illuminating lamp and the incubator lamp of the Black family and delivered to W. E. Campbell, the city oil inspector of the city of Collinsville. Mr. Campbell tested the oil by the standard used for testing oil and which is known as the Taglibue test. The oil was tested by heating it and using an apparatus to which a thermometer was attached to register the temperature of the oil in degrees Fahrenheit. When this oil registered 127 degrees it flashed, and fired at 135 degrees, and as the temperature of the oil was reduced it flashed at 120 degrees and burned at 130 degrees.

Mr. Gebauer had placed in his tank at his store, and from which he withdrew the oil sold to the Black family, kerosene which he purchased from the Madison County Oil Company and from the Standard Oil Company. The Madison County Oil Company was the distributor of the appellant's products in Madison county outside of the tri-cities. There was no privity or legal connection between appellant and the Standard Oil Company proved.

The Madison County Oil Company supplied Gebauer's tank with about 30 or 40 gallons of oil each week. On different days during the month of May, 1926, beginning on the 3rd day and ending on the 25th day, the Madison County Oil Company placed in Gebauer's tank 95 gallons of kerosene, the product of the appellant; and an additional 30 gallons of such oil were put in said tank during the month of May, but the exact date is not known. On April 30, 1926, the Standard Oil Company placed in said tank 30 gallons of its kerosene which was purchased by Gebauer from the latter company. It is not known if Gebauer's tank was empty or not on April 30, nor whether it was empty on

any occasion between that time and the 15th day of May. Mr. Campbell also testified, on behalf of appellee, that he tested all the kerosene distributed by the Standard Oil Company in the vicinity of Collinsville during the entire year of 1926 at its tank cars, and that none of it ever flashed or fired below 150 degrees Fahrenheit.

The railroad car containing kerosene of appellant was placed on a siding of the Madison County Oil Company at Edwardsville on April 20, 1926. It was a portion of this kerosene which was later sold to the Black family by Gebauer. Appellant proved by C. O. Nash, the city oil inspector for the city of Edwardsville, that he tested all the Texaco kerosene shipped into Edwardsville by the Texas Oil Company during the months of May and April, 1926, which was delivered to the Madison County Oil Company. "Texaco" was the name under which the products of appellant were sold as is shown by the sales tickets introduced in evidence by appellee and also shown by the testimony of the witness, James C. Pierce. A reading of Mr. Nash's testimony leads to no other conclusion than that by the name "Texaco Oil Company," he meant the Texas Company, the appellant herein. The court is convinced that there is no merit in appellee's contention that Nash's testimony meant any other than the kerosene of appellant or any other company than the appellant company.

There is no evidence showing the flashing or burning point of the oil in Gebauer's tank at any time. The evidence further shows that kerosene will not explode unless it is mixed with gasoline or some other explosive substance.

As before stated, the verdict of the jury was in favor of the appellee, and appellant assigns as error that the verdict is contrary to the evidence.

It is clear from the evidence that the oil which exploded in the Black home must have been contaminated

after it left the tank cars of the appellant or of the Standard Oil Company either before or after it went into Gebauer's tank. Appellee assumes that as the oil of the Standard Oil Company was tested in the tank car of said company the oil of that company is eliminated as a causal factor of the explosion. Assuming this to be true, at the present and for the sake of argument, the other legal phases of the case will now be considered. The appellee contends that the evidence shows that the Madison County Oil Company was, during the months of April and May, 1926, the agent of the appellant and that the rule *respondeat superior* applies. The appellant, on the contrary, insists that the evidence does not show that the Madison County Oil Company was at such time the agent of the appellant. As this is an important element in the case it will be necessary to examine the evidence bearing on the proposition if the Madison County Oil Company was such agent of the appellant at such time. The only evidence tending to prove the relationship of principal and agent by the said company is contained in the testimony of one James C. Pierce who testified, on that point, as follows: "Q. In 1926, throughout the month of May, * * * what connection did you or the Madison County Oil Company bear to the Texas Company? A. Distributors of Texaco Petroleum products. Q. Were you distributing agent for that company? A. Yes. Q. Where did you distribute? A. In Madison County exclusive of the tri-cities." Pierce also testified that the Texas Company at St. Louis or Chicago would notify him, from time to time, when they had kerosene to sell and he would place an order for a car of kerosene which he would deliver to purchasers by means of tank wagons. Pierce was the manager of the Madison County Oil Company.

Attention is also called to the fact that the appellee in her declaration alleges that the appellant, by its servant, negligently and carelessly furnished and sup-

plied to said Gebauer for retail trade said kerosene and, by its said servant, represented said kerosene to be reasonably fit and safe for domestic use, but that the same was dangerous on account of its combustible condition. It was therefore incumbent on the appellee to prove the agency of the Madison County Oil Company (*Chesley v. Woods Motor Vehicle Co.*, 147 Ill. App. 588). It is also true that the rule *respondeat superior* does not apply unless the relationship of master and servant exists and the servant's actions are controlled by the master and are within the scope of his employment (*Orr v. Thompson Coal Co.*, 219 Ill. App. 116; *Neville v. Chicago & A. R. Co.*, 210 Ill. App. 168; *Clausen v. Finkelstein*, 209 Ill. App. 341). The word "agent" is a very extensive term and in a general sense applies to persons in the service of, or who perform some acts for, another, and who in a legal sense would not necessarily be the agent of such person and stand in the place of his principal and be his representative (*Clement v. Canfield*, 28 Vt. 302, 304; *Turner v. Cross*, 83 Tex. 218, 18 S. W. 578). The fact that parties engaged in an undertaking, or in an agreement, term their relationship as one of agency is not conclusive upon the court that the legal relationship of principal and agent exists between the parties. And in the case of *Bendix v. Staver Carriage Co.*, 174 Ill. App. 589, the court decided that although the contract was entitled "Agency Agreement," in which contract plaintiff was granted an exclusive right to sell defendant's motor cars in specific territory for a certain time, it did not create an agency so that in the legal sense the plaintiff became the agent of the defendant. And in the case of *Lauer Brewing Co. v. Schmidt*, 24 Pa. Super. Ct. 396, 400, the court said: "The plaintiff, a brewing company, established what it describes as 'agencies' for the sale of its products. As thus employed, however, the words 'agency' and 'agent' must be regarded as in the nature of trade

names. The person conducting the so-called agency was in no sense an agent. He was in fact a purchaser at wholesale, buying at a stipulated price, and selling not for the manufacturer but for himself. In the conduct of his business he was wholly independent of the manufacturer, was without authority to bind him in any manner, and without responsibility to him except for the price of the goods received.''

The sales tickets showing the purchase of the oil in question by Gebauer are headed Edwardsville, Illinois, with the date, and further state that the kerosene was bought of the Madison County Oil Company and they are receipted by H. Dustmen who was the servant of the Madison County Oil Company and the driver of their tank wagon. As before pointed out, the witness Pierce testified that the railroad car containing the kerosene was placed on a railroad siding of the Madison County Oil Company at Edwardsville. There was no further evidence tending to prove the agency of the Madison County Oil Company. It is the conclusion of this court that sufficient and necessary facts were not proven by the appellee to establish in a legal sense the existence of the relation of principal and agent between the appellant and the Madison County Oil Company.

There being no evidence proving any negligence on the part of the appellant, or its authorized agent, in selling kerosene below the legal igniting point of 150 degrees Fahrenheit, the court is of the opinion that the explosion, as a result of which appellee claims to have been injured, is too remote from the delivery of kerosene by the appellant to the Madison County Oil Company to make the appellant liable. This court agrees with the reasoning which is given in the case of *Ellis v. Republic Oil Co.*, 133 Iowa 11, 110 N. W. 20, where the learned judge says: ''If A., owning standard high grade oil, directs his agent, B., to deliver

it to C., whose agent, in turn, delivers it to D., proof that upon its delivery to B., it was of pure and unmixed quality, and upon the final delivery to D. it was found to be a mixture of oil and gasoline, directly and legitimately tends to the conclusion of negligence by some person or persons who have handled or dealt with the article in its course of transmission. If but one such person is found, the inference of his negligence is so strong that the unexplained circumstances bring the case well within the principle, if not the rule, of *res ipsa loquitur,* and justify a finding against him. If two such persons are found who handle the article in succession, neither being responsible for the conduct of the other, and the evidence failing to indicate one rather than the other as the person at fault, it may be (we do not decide) that a verdict against neither could be sustained.''

In the case of *Pressley v. Bloomington & N. Ry. & Light Co.,* 271 Ill. 622, the Supreme Court held that a generating company which sells electric current to a distributing company and furnishes the current over a wire owned by the distributing company is not liable for an injury due to defective insulation of the wire, unless the generating company, with knowledge of the distributing company's negligence in permitting the wire to become defective, continues to supply the current.

Attention is again called to the 30 gallons of kerosene which were placed in Gebauer's tank by the Standord Oil Company on April 30, 1926, when it is not known whether the tank was empty or not. It is also worthy of note that in addition to his kerosene tank, kept in his warehouse, Gebauer also had stored in front of his premises gasoline kept in an underground tank. The sales tickets show that at the same time that Gebauer replenished his kerosene supply, he also received large quantities of gasoline from the Madison County Oil Company.

The source of the contamination of the kerosene in the Black home is not proved by the evidence and upon whom the responsibility for the explosion should rest is a matter of conjecture.

The judgment of the lower court is reversed on the grounds that the evidence does not prove that any negligence of the appellant was the proximate cause, or a causal contributing element, of the explosion, and also that the verdict of the jury is contrary to the evidence.

*Reversed and cause remanded.*