## SUNDAY *v.* WOLVERINE SERVICE STATIONS.

1. EVIDENCE—EXPLOSIVES—IDENTIFYING EVIDENCE.

In action against purveyor of oil for death of child caused by explosion of kerosene used in cooking, alleged to be due to defendant's negligence in permitting gasoline to enter container from which kerosene was sold, whether can of oil procured by neighbor from same source, together with testimony of chemist that said oil was explosive, was properly identified in passing to chemist, and also sufficiently identified with oil used in decedent's home, *held,* question of fact for jury.

2. TRIAL—VIEW BY JURY.

Where plaintiff's case, in action for death of decedent resulting from explosion of kerosene, was based upon claim that gasoline passed from its compartment and fused with kerosene in adjoining compartment of tank furnished by defendant, view by jury constituted proper evidence of construction of tank.

3. SAME—EXPLOSIVES—INSTRUCTIONS—INAPPLICABLE STATUTE.

In action based upon oil dealer's unintentional and negligent mixture of gasoline with kerosene, rendering it explosive, trial court was in error in instructing jury in regard to statute prohibiting said mixture as trade practice or intentional act (1 Comp. Laws 1929, § 601).

SHARPE, J., dissenting.

Appeal from Van Buren; Warner (Glenn E.), J. Submitted June 15, 1933. (Docket No. 52, Calendar No. 37,250.) Decided December 5, 1933.

Case by Sylvester Sunday, administrator of the estate of Winifred Sunday, deceased, against Wolverine Service Stations, a Michigan corporation, for personal injuries resulting in death of plaintiff's decedent alleged to be due to the negligence of defendant. Verdict and judgment for plaintiff. Defendant appeals. Reversed, and new trial granted.

*Earl L. Burhans,* for plaintiff.

*Mason, Alexander & McCaslin* and *E. Dean Alexander* (*Frederick J. Ward,* of counsel), for defendant.

WIEST, J. Winifred Sunday, six years of age, was with her mother in the home kitchen when the mother poured oil into the cook stove from a kerosene can. The kerosene can exploded and both mother and daughter died from burns within a few hours. This action was brought, in behalf of the estate of the little girl, against the alleged purveyor of the oil and resulted in a verdict of $9,000.

It was claimed at the trial that defendant negligently permitted gasoline to pass from one compartment in a tank upon a delivery truck to that of another compartment containing kerosene, thereby rendering the kerosene oil highly explosive. The oil was procured by the Sunday family, some days before the explosion, from a neighbor who vended to a few of his neighbors as an accommodation, and it was furnished to him by defendant company.

At the trial a can of oil, procured by a neighbor from the same source, was admitted in evidence, together with testimony of a chemist that he had analyzed the contents and found the same explosive. This was objected to, on the ground that the can of oil tested was not properly identified in passing to the chemist, and, besides, was not sufficiently identified with the oil used in the home of the Sundays. The evidence presented a question of fact for the jury.

Plaintiff's case was based upon the claim that gasoline passed from its compartment and fused with kerosene in an adjoining compartment of a tank used for delivering both oils. The tank was

furnished by defendant company and installed upon a truck belonging to and operated by a third party. It was claimed by defendant at the trial that the two compartments mentioned were not only separated by metal ends, but as well by a baffle plate and subsequent inspection and cutting into the tanks disclosed no possible connection between the two. The tanks were inspected by the jury, and it is claimed in behalf of plaintiff that the riveting disclosed but a single metal plate between the two compartments and no baffle plate. View by the jury constituted proper evidence.

The circuit judge instructed the jury as follows:

"The statute provides that no person shall adulterate with benzine or other substance, for the purpose of sale, or for use, any kerosene oil, to be used in lighting or heating, in such manner as to render it dangerous to use; nor shall any person, knowingly, sell or offer to sell, or, knowingly, use such adulterated oil; nor shall any person, knowingly, sell, or offer for sale, or knowingly use, any coal or kerosene oil, or any products of petroleum for illuminating or heating purposes which, by reason of being so adulterated, or for any other reason, will emit a combustible vapor at a temperature of 120 degrees, or less, of Fahrenheit thermometer, where tested as provided by law of this State."

This instruction was based upon 1 Comp. Laws 1929, § 601. The court was in error in so instructing the jury. That statute prohibits a trade practice or an intentional act, and bears no relation to unintentional and negligent infusion of the two oils.

For the error pointed out the judgment is reversed and a new trial granted, with costs to defendant.

POTTER, NORTH, FEAD, and BUTZEL, JJ., concurred with WIEST, J.

Sharpe, J. (*dissenting*). Immediately following that portion of the charge quoted by Mr. Justice Wiest, the trial court said:

"If you find the defendant furnished to Tesla Powers the kerosene which caused the explosion; that Tesla Powers delivered a quantity of it to Bert Powers; and some of it was obtained by Sylvester Sunday; and if the plaintiff has proved by a preponderance of the evidence that, when said kerosene was delivered to Bert Powers, it emitted, and when used in plaintiff's home on May 27, 1932, it emitted a combustible vapor at a temperature of 120 degrees, or less, of Fahrenheit thermometer when tested as provided by the laws of this State; and that such kerosene so tested because there was a leak in the compartment in the tank, then the defendant was negligent; and, if such negligence was the proximate cause of the damage, it would be liable."

Before the arguments, defendant's counsel requested the submission of certain special questions to the jury. The court announced that he would submit them, and counsel were permitted to base their arguments thereon. The questions and answers were as follows:

"Has the plaintiff satisfied you by a preponderance of the evidence that the kerosene used by Irene Sunday in lighting the fire at the time of this accident had a flash point of less than 120 degrees?

"*Answer:* Yes.

"Has the plaintiff satisfied you by a preponderance of the evidence that the tank wagon here in question had a leak, so that gasoline seeped from the gasoline compartment into the kerosene compartment?

"*Answer:* Yes.

"Do you find that the manner in which the kerosene was used by Mrs. Sunday in lighting the fire

was the proximate cause of the accident independent of any other cause?

"*Answer:* No.

"If you return a verdict for the plaintiff in this case, state what amount, if any, you have awarded as part of your verdict, for pain and suffering.

"*Answer:* $6,000.

"If you return a verdict for the plaintiff in this cause, state what amount, if any, you have awarded to the plaintiff for future loss of earnings.

"*Answer:* $3,000."

In view of the above instruction and the questions and answers, it seems clear to me that the jury were in no way influenced by the instruction complained of, and that it cannot be said to have affected their verdict.

I concur in holding that the errors considered were without merit. I am also of the opinion that the verdict was not against the great weight of the evidence.

It is urged that the verdict was excessive. That the deceased suffered intensely is apparent. She lived about nine hours after the accident.

"Assessment of damages for pain and suffering demands calm calculation, to some extent a heartless computation, and the feelings must be held in check, in order to arrive at a reasonable money award." *Stone* v. *Sinclair Refining Co.,* 230 Mich. 472, 474.

I am impressed that the award of $6,000 for pain and suffering was excessive. If the plaintiff will, within 20 days after the filing of this opinion, remit $3,000 therefrom, the judgment for $6,000 should stand affirmed; otherwise, it should be reversed and a new trial ordered. In any event, the defendant should have costs of this appeal.

MCDONALD, C. J., did not sit. CLARK, J., took no part in this decision.