PAULL *v.* McBRIDE.

1. EXPLOSIVES—IMPLIED WARRANTY—KEROSENE—KINDLING FIRE.

Implied warranty that kerosene could be used safely for usual purpose of heating and illumination by ultimate consumer where it had been approved in tank car before sale by dealer to distributor who delivered it to grocer who furnished it to plaintiff's family does not extend to its use for kindling fires.

2. SAME—NEGLIGENCE—QUESTION FOR JURY—KEROSENE—KINDLING FIRES.

Question of negligence in use of kerosene for purpose of kindling fires is one of fact for jury under proper instructions.

3. SAME—NEGLIGENCE—CONTAMINATED KEROSENE—EVIDENCE.

In action against dealer, distributor and grocer for negligent contamination of kerosene sold plaintiff's family 26 days before explosion, proof of defendants' negligence *held*, insufficient where it consisted of *prima facie* showing that plaintiff's family possessed contaminated oil.

4. SAME—NEGLIGENCE—EVIDENCE—CONJECTURE.

In action against dealer whose tank car of kerosene was duly inspected and approved March 8th, distributor who purchased 146 gallons March 24th and grocer to whom distributor delivered 25 gallons the next day, for negligent contamination of 2 gallons purchased by plaintiff's family on April 19th, alleged to have resulted in explosion at home when fire was kindled on May 15th, both intervals of time and responsibility for explosion *held*, to rest case upon conjecture (1 Comp. Laws 1929, § 586; Act No. 328, § 28, Pub. Acts 1931).

5. EVIDENCE—CONJECTURE.

Juries may draw reasonable conclusions from the proofs but they may not arrive at their verdicts by processes of guess or conjecture.

6. EXPLOSIVES—KEROSENE—JUDGMENT NON OBSTANTE VEREDICTO—KINDLING FIRE.

In action for injuries, sustained as result of using kerosene for kindling fire in kitchen stove after 9 o'clock in the evening after fire had been allowed to go out following evening meal,

against dealer, distributor and grocer for alleged negligent contamination of kerosene, there being no evidence of negligence of defendants or either of them, their motions for judgment *non obstante veredicto* should have been granted.

Appeal from Kent; Perkins (Willis B.), J. Submitted October 9, 1935. (Docket No. 40, Calendar No. 38,392.) Decided December 10, 1935.

Case by Wayne Paull against C. Glen McBride, Roy S. Whittall and John C. Schwab, doing business as the Whittall & Schwab Oil Company, and Cities Service Oil Company, a Michigan corporation, for personal injuries sustained as the result of an explosion of kerosene. Verdict and judgment for plaintiff. Defendants appeal. Reversed, without a new trial.

*Linsey, Shivel & Phelps (John H. VanderWal,* of counsel), for plaintiff.

*Henry J. Blakely,* for defendants Whittall and Schwab.

*Dilley & Dilley,* for defendant Cities Service Company.

BUSHNELL, J. Plaintiff Paull was injured while attempting to rescue his mother from a fire caused by an explosion of contaminated kerosene. A carload containing 8,115 gallons of illuminating oil, vaporizing at 131 degrees, and belonging to defendant Cities Service Oil Company at Grand Rapids, was approved by the deputy oil inspector March 8, 1933. Act No. 328, § 28, Pub. Acts 1931, prohibits the sale of kerosene that will emit a combustible vapor at a temperature of 120 degrees or less Fahrenheit. March 24th, Whittall and Schwab pur-

chased 146 gallons of kerosene from Cities Service
Oil Company delivering 25 gallons the next day to
McBride, a grocer at Rockford, who on April 19th
delivered 2 gallons thereof to the Paull home, placing
the same in their five-gallon can from which a smaller
quantity was drawn into an empty one-gallon can on
May 13th. McBride also sells Standard Oil kero-
sene from a separate tank and was unable to say
whether the Paulls received Standard or Cities Serv-
ice oil, but the record shows that McBride did not
handle or sell gasoline.

On the day of the accident, May 15th, the Paull's
kitchen stove had been allowed to go out after the
evening meal, plaintiff's father testifying that there
was no fire in the grate at 6:45 p. m.  Some time be-
tween 9:15 and 9:30 that night plaintiff, his brother
and mother, in attempting to clear a drain in the
cellar found need for hot water and Mrs. Paull went
upstairs to build a fire in order to heat the water.
Later the sons heard a sharp explosion, ran up and
found their mother lying on the floor in flames which
had spread to the floor and walls near the stove.
State Trooper Carpenter, who reached the scene,
before Mrs. Paull was removed to the hospital, made
a careful examination of the premises as did his
commanding officer, Lieutenant Downing, the next
morning.  The officers took the five-gallon can and
its remaining contents to headquarters where Foster
cup tests revealed that the residue of oil had a flash-
ing point of from 102 to 109 degrees.  Samples of
kerosene were immediately secured from all the local
dealers, none of which tested lower that 129 degrees.
The contents of the two McBride tanks testing:
Cities Service, 139 degrees, and Standard, 150 de-
grees.  Check tests were run by witnesses Wood-
ward, a State chemist, and Buck, a safety supervisor

for Standard Oil, resulting in the finding of variations in Standard of 3 points and Cities Service of 16 points; it was upon this comparison testimony that plaintiff claims Standard is eliminated as a possible source of the contaminated oil. No samples from any source tested as low as the Paull residue.

At the close of plaintiff's proofs, the defendants separately asked for directed verdicts, claiming plaintiff had failed to establish any breach of their common-law duty or of the violation of Act No. 328, § 28, Pub. Acts 1931, to which Cities Service added that the proofs failed to show a contractual relation between themselves and plaintiff. They also claimed they were neither manufacturers nor refiners, being merely dealers in petroleum products The various motions were denied by the trial judge who indicated his view that the situation at this stage of the lawsuit was controlled by that portion of *Hertzler* v. *Manshum,* 228 Mich. 416 (a poisoned flour case), which reads:

"The burden rests upon plaintiff to show that the poison was in the flour when purchased from defendant Manshum. If such fact is established plaintiff will make out a *prima facie* case against both defendants and the burden will shift to defendants to excuse themselves. If defendant Manshum satisfies a jury that the flour was delivered by him to plaintiff's decedent in the same container, and exactly as furnished him by the manufacturer; in other words that the poison did not get into the flour while in his possession, then he is not liable, and excuse, if any, is to be made by the manufacturer. If the manufacturer satisfies a jury that, in making and packing and marketing the flour, the highest degree of care was exercised, then no actionable negligence or breach of duty exists and plaintiff is without remedy."

Save such as may be gleaned from the testimony of defendants McBride and Schwab, who were called by plaintiff for cross-examination under the adverse party statute,* defendants offered no proofs. After obtaining a reservation by the court, of the right to enter a judgment *non obstante veredicto,* † all parties submitted to the jury's consideration of the facts resulting in a verdict for plaintiff against all the defendants in the sum of $870 and affirmative answers by the jury to special questions regarding the negligence of each of the three defendants. The various motions, on the usual grounds, for judgments notwithstanding the verdict and for new trials were all denied.

Appellee says the only question involved is whether defendants were negligent in selling and delivering a product which contained gasoline and which was more inflammable and more explosive than kerosene. Appellants' appeals are upon theories of an absence of proof of any negligent act or omission on their part, no showing of contamination or adulteration by any of them, the protection afforded by the statutory examination (1 Comp. Laws 1929, §§ 586, 587) of the oil on March 8th, the erroneous application of the law of *Hertzler* v. *Manshum, supra,* coupled with a question of its place in the law of Michigan and the jury's speculative and conjectural conclusions upon inadequate facts.

It is, perhaps, unnecessary to analyze the principles involved in the various contaminated kerosene cases in this State and we content ourselves with a recapitulation of the authorities to which reference may be had. These are: *Stowell* v. *Standard Oil Co.,* 139 Mich. 18 (17 Am. Neg. Rep. 569); *McLawson* v. *Paragon Refining Co.,* 198 Mich. 222; *Stone* v. *Sin-*

---

* 3 Comp. Laws 1929, § 14220.—REPORTER.
† See the Empson Act, 3 Comp. Laws 1929, § 14531.—REPORTER.

clair Refining Co., 225 Mich. 344; Rife v. Gafill Oil Co., 235 Mich. 15; Sunday v. Wolverine Service Stations, 265 Mich. 19; and Zook v. Theisen-Clemens Co., ante, p. 536. The case of Hertzler v. Manshum, supra, has been cited in Hertzler v. Manshum, 237 Mich. 289, and Cheli v. Cudahy Bros. Co., 267 Mich. 690. To the foregoing may be added annotations found in 19 L. R. A. (N. S.) 923; 17 A. L. R. 667; 39 A. L. R. 992, and 74 A. L. R. 343. See, also, Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159 (29 Sup. Ct. 270).

In attempting to confine our opinion in Hertzler v. Manshum, 228 Mich. 416, to cases of poisonous substances in flour, we said:

"The law, recognizing the imperative need of consumers of foodstuffs to rely upon the care of manufacturers thereof, and the inability of consumers, in a case like the one at bar, to detect injurious impurities or poisonous substances therein, and the complex system of modern production and distribution, holds the manufacturer, who prepares foodstuffs, destined to be sold to and consumed by the public, liable to consumers purchasing from a retail dealer, for a breach of an implied warranty, arising from foreign poisonous substances therein, and there only by reason of want of a high degree of care."

This rule was not extended to dynamite caps in Pesavento v. E. I. Dupont De Nemours & Co., 240 Mich. 434, and oil stoves in Pickens v. Crowley-Milner & Co., 258 Mich. 102. In a case involving uncooked pork, we said in Cheli v. Cudahy Bros. Co., supra:

"The warranty should only be applied to food used in the usual, rather than in the unusual and improper manner."

In *Pesavento* v. *E. I. Dupont De Nemours & Co.,* *supra,* we discussed the liability of manufacturers and vendors to third parties for negligence in the manufacture and sale of articles and quoted the general rule and its exceptions as stated in *Huset* v. *J. I. Case Threshing Machine Co.,* 57 C. C. A. 237 (120 Fed. 865, 61 L. R. A. 303).

Kerosene is ordinarily produced and used for the purpose of heating and illumination. While it is known to be used for kindling fires, such use is also generally known to involve some danger. The question of negligence in such instances is one of fact for the jury under proper instructions. *McLawson* v. *Paragon Refining Co., supra.* We have no desire to extend the principles of the *Hertzler Case,* 228 Mich. 416, where flour was used for food, to the use of kerosene for kindling fires. None of the kerosene cases, *supra,* in this State have gone so far as to relieve plaintiffs from proof of defendants' negligence upon a mere *prima facie* showing of the possession by plaintiff's family of contaminated oil. In the case at bar, the source of supply was traced but, the intervals of time between inspection of the carload March 8th and delivery by McBride April 19th followed by an explosion of kerosene in the Paull home some 26 days thereafter, standing alone, leaves too much to conjecture. The oil may possibly have become contaminated while in Cities Service storage tanks, while being drawn into Whittall & Schwab's truck, in McBride's tanks or cans, or in Paull's home; and upon whom the responsibility for the explosion should rest is also a matter of conjecture. Juries may draw reasonable conclusions from the proofs but they may not arrive at their verdicts by processes of guess or conjecture. *Zoski* v. *Gaines,* 271 Mich. 1, and *Black* v. *Texas Co.,* 247 Ill. App. 301.

There being no evidence of the negligence of defendants or either of them, the various motions *non obstante veredicto* should have been granted. The judgment is reversed without a new trial, and with costs to defendants.

POTTER, C. J., and NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.

The late Justice NELSON SHARPE took no part in this decision.