WABEKE v. BULL.

1. NEGLIGENCE—EVIDENCE.
   Negligence must be affirmatively proved.

2. SAME—BURDEN OF PROOF.
   The burden of proving negligence rests upon the party alleging it.

3. PHYSICIANS AND SURGEONS—NEWBORN INFANT—ELECTRIC HEATING PADS—NEGLIGENCE.
   In action against a physician for negligence in care of a newborn infant alleged to have been burned because placed on an electric heating pad while in a maternity home to the owner of which he had given instructions to keep infant warm, evidence as to whether or not he saw or should have seen pad or cord that ran to the appliance which he testified he would have removed had he seen it *held*, insufficient to take question of his negligence to jury, where witnesses who testified it was attached were not in the same room as defendant and infant at time he treated the infant's eyes with nitrate solution.

4. NEGLIGENCE—RES IPSA LOQUITUR.
   The doctrine of *res ipsa loquitur* is not favored in this State.

5. TRIAL—JURY—INFERENCES—SPECULATION.
   A jury may draw reasonable inferences from the established facts, but it is not to be permitted to speculate as to the facts themselves.

6. PHYSICIANS AND SURGEONS—CARE OF NEWBORN INFANTS—MATERNITY HOME—ACTS PERFORMED OUT OF DOCTOR'S PRESENCE.
   Physician who delivered an infant at a maternity home, suggested by him but with owner of which plaintiff father had made independent arrangements, *held*, as a matter of law, not liable for act of owner of home in placing infant on an electric heating pad which resulted in burning infant, where defendant merely instructed her to keep the infant warm and such act was performed by her out of his presence, since he

was not liable for unauthorized negligent acts performed by her which he did not observe, and in the exercise of reasonable vigilance, was not bound to observe.

7. SAME—CARE OF NEWBORN INFANTS—NEGLIGENCE—BURDEN OF PROOF—EVIDENCE.

Plaintiff, father of newborn infant at maternity home, with owner of which he had made arrangements independently of defendant physician who attended wife at childbirth, *held*, not to have sustained burden of showing defendant should have observed that owner of home had placed infant on an electric heating pad when he treated infant's eyes with nitrate solution shortly after delivery, where owner of home, then present, was not called as a witness.

BUSHNELL, SHARPE, and NORTH, JJ., dissenting.

Appeal from Kent; Perkins (Willis B.), J. Submitted April 6, 1939. (Docket No. 41, Calendar No. 39,951.) Decided July 6, 1939.

Case by Cornelius J. Wabeke against Frank Bull for damages for alleged negligence in the care of an infant. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Carl E. Hoffman* (*Clare E. Hoffman,* of counsel), for plaintiff.

*Bidwell & Perry* (*Douglas, Barbour, Desenberg & Purdy,* of counsel), for defendant.

BUSHNELL, J. (*dissenting*). Plaintiff brought this action against defendant Frank Bull, a physician of Sparta, Michigan, claiming negligence in the care of his new-born son. Before the baby was born, Dr. Bull suggested using the maternity home of a Mrs. Scoby at Sparta, where he had delivered approximately 35 babies, and independent arrangements were made with Mrs. Scoby.

Plaintiff's wife went to Mrs. Scoby's maternity home on the morning of September 30, 1935. The baby was brought out of the delivery room about 5:35 p. m. by Mrs. Scoby, who had been instructed by the doctor to place it where it would be warm. She wrapped it in a little blanket and placed it on an overstuffed chair in the reception room. This room was divided by a screen or series of screens. In the center of the room there were overhanging light fixtures from which an electric cord attachment ran over a screen and to which a pad was attached. The new-born baby was placed by Mrs. Scoby on this electric pad.

About a half hour after the birth, when he had taken care of the mother, Dr. Bull came into the reception room and Mrs. Scoby helped him put silver nitrate in the baby's eyes. He then unwrapped the child to make sure it was all right and carefully examined its body. He found no physical defects or ailments of any kind. The doctor did not remember picking up the baby or what wrappings were around it, but he was quite positive there was no electric pad under the baby at the time of his examination. He said that, if the cord attachment that plaintiff described had been there, he would have seen it, and that, if he had known the electric pad was under the baby, he would have had it removed.

Dr. Bull then left the maternity home and, when he reached his office about 8 p. m., he was informed the baby had been burned. He returned immediately to the maternity home, examined the baby, and found two burns on its buttocks, one as large as a silver dollar on the left, and on the right, one as large as a fifty-cent piece.

Ten days after its birth, Dr. Bull took the baby to St. Mary's Hospital in Grand Rapids because, from its appearance, he was of the opinion that the child

had pneumonia. Examination at the hospital disclosed that the baby did not have pneumonia but had nephritis, an inflammation of the kidneys, caused, according to Dr. Dixon, a pediatrician at St. Mary's Hospital, by either the burn itself or the absorption of toxins, his opinion being that the burn itself was the primary cause of the nephritis. The baby was in the hospital from October 9th to April 7th. The expenses incurred by the father were in the neighborhood of $3,500. The child eventually made a full and complete recovery.

At the close of plaintiff's case the court granted defendant's motion for a directed verdict, upon which a judgment of no cause of action was entered.

Appellant argues that the court was in error in directing a verdict for the defendant and in holding that there was no evidence tending to show that Dr. Bull was guilty of negligence in permitting the baby to be burned and improperly treating the child. It is also claimed that the court erred in holding there was no evidence tending to show that the doctor was negligent in failing to inform the parents of the burn and of its extent.

There is nothing in the record to indicate that Dr. Bull had any interest in the operation of Mrs. Scoby's maternity home. His responsibilities were those of an attending physician to Mrs. Wabeke and the baby. Nor is there any testimony to indicate that he specifically instructed Mrs. Scoby to place the child upon an electric pad. He said that, had he known it was there, he would have had it removed, and that:

"Whatever Mrs. Scoby did, then and there, was under my supervision and direction, while I was putting the silver nitrate in the baby's eyes."

His counsel say in their brief that "if, in the exercise of reasonable vigilance, he should have noticed it (the electric pad) he should have removed it."

Dr. Bull was answerable for the negligence of Mrs. Scoby, which he "observed or, in the exercise of reasonable vigilance, should have noticed." *Rodgers* v. *Canfield*, 272 Mich. 562, 564. Want of skill or care on the part of Mrs. Scoby in the absence of Dr. Bull cannot be charged against him, but any lack of care which he saw or should have seen should be charged against him.

The trial judge was of the opinion that there was nothing in the testimony produced by plaintiff which raised any disputed question of fact for the consideration of the jury. We do not share this view. Under some circumstances, a jury could properly find that, to place and leave a new-born baby on a heated electric pad is negligence. Plaintiff and his mother-in-law both testified that the baby was laid upon an electric pad. Dr. Bull said he did not see any pad. This raised a disputed question of fact for the jury, especially in view of Dr. Bull's testimony that, if an electric cord had been there, he would have seen it and would have removed the electric pad.

We are impressed by the fairness and candor of Dr. Bull's testimony and the record does not justify the claim that Dr. Bull was negligent in any particular in the treatment of the burns. Whether or not he should have had the child's temperature taken is immaterial under the circumstances of this case. Dr. Dixon testified that the baby had a temperature of only 98 when it came into the hospital at Grand Rapids, which indicates that, had its temperature been taken, it would have disclosed a practically normal condition.

Plaintiff's wife testified that she was informed by Dr. Bull of the burn about 24 hours after it happened and that she told her husband exactly what the doctor told her. The doctor cannot be held negligent for failing to inform the parents of the burn and its extent.

It is not necessary to decide other questions raised pertaining to the claimed improper exclusion of evidence and prejudicial conduct in general on the part of defendant's counsel.

Under the authority of *Rodgers* v. *Canfield, supra,* the judgment entered upon the directed verdict should be vacated and the cause remanded for a new trial, with costs to appellant. It should be so ordered.

SHARPE and NORTH, JJ., concurred with BUSHNELL, J.

CHANDLER, J. Negligence must be affirmatively proved (*Sward* v. *Megan,* 284 Mich. 421; *Pulford* v. *Mouw,* 279 Mich. 376; *Fleegar* v. *Consumers Power Co.,* 262 Mich. 537), and the burden of such proof rests upon the party alleging it. *Shadduck* v. *Railway Co.,* 179 Mich. 433.

In his opinion, Justice BUSHNELL considers a new trial necessary because of an alleged dispute of fact as to whether or not the electric cord was attached to the electric heating pad under the baby when the latter was examined by the defendant, which cord, if attached, would give rise to the question of whether or not defendant was guilty of a negligent omission of duty in failing to observe the cord and pad, recognize the danger and remove it.

Three witnesses, the plaintiff, the plaintiff's mother-in-law, Mrs. Garlinger, and the defendant, testified in regard to the heating pad. The plaintiff testified that the child was brought out of the delivery room at 5:35 p. m. and laid in an overstuffed

chair in the reception room, and that an electric heating pad, covered with a rayon blanket, was between the baby and the cushion of the chair. Plaintiff further testified that he saw the baby placed on the pad and then left the hospital within a short time to make a telephone call. Plaintiff returned at 6 p.m. and stayed until 6:20 or 6:30 p. m. at which time he went home.

Mrs. Garlinger testified that she saw the baby brought from the delivery room, saw the electric pad placed upon the chair and saw the baby, wrapped in a rayon bedspread, laid thereon. She then went into the delivery room while Mrs. Scoby stayed with the baby. The witness returned to the reception room in about 15 or 20 minutes and noticed that the baby was still lying on the pad. The doctor was not present. The witness then went to another part of the hospital and returned 15 minutes later as she was leaving the hospital with the plaintiff between 6 and 6:30 p. m. On each of the three occasions mentioned the witness testified that the child was on the pad, and that the pad was attached to the cord by Mrs. Scoby and plaintiff.

The defendant testified that about half an hour after delivery of the baby he went with Mrs. Scoby to examine the child and put silver nitrate in its eyes. He carefully examined the infant and found it to be normal. He had to bend over and hold its eyes open while inserting the drops. Nevertheless, his testimony is that he did not see the electric pad or the cord that ran to the appliance. He said that if the cord arrangement, as described by plaintiff, had been there he would have seen it and would have removed the pad.

From this testimony it does not appear that either the plaintiff or plaintiff's mother-in-law were present in the reception room at the time the defendant

examined the baby. It cannot be said, therefore, that there was a conflict of testimony as to the presence of the cord attached to the pad under the baby when it was being examined by the defendant.

By plaintiff's own testimony the pad itself was not visible because of the blanket which covered it, but only the cord running from the pad to the ceiling fixture could be seen. It is significant, therefore, that both plaintiff and Mrs. Garlinger were in the room with the baby only at intervals of 15 minutes or more and that neither was present when the doctor examined the baby. It is quite possible that during one of such intervals Mrs. Scoby disconnected the electric cord prior to the doctor's examination and reconnected it afterwards. However, this is just speculation, and is exactly the same type of speculation that a jury would have to indulge in if the question of defendant's alleged negligence had been put to it under the existing testimony.

The situation presented is unlike a case where two or more persons give conflicting testimony concerning something which they witnessed at the same time. That, of course, would present a question of fact for the jury, to be decided according to the weight of the testimony and the credibility to be given the respective witnesses. *Davis* v. *Belmont Creamery Co.*, 281 Mich. 165.

It is true that this court has held that a jury may draw legitimate inferences from established facts, and that to do so is not considered to be mere speculation or guesswork, nor the adoption of the *res ipsa loquitur* doctrine which is not favored in this State. *Heppenstall Steel Co.* v. *Railway Co.*, 242 Mich. 464; *Faustman* v. *Hewitt*, 274 Mich. 458; *Fish* v. *Railway*, 275 Mich. 718; *Trent* v. *Pontiac Transportation Co., Inc.*, 281 Mich. 586 (2 N. C. C. A. [N. S.] 485). This

rule, as the above cases show, is applied most commonly in accident cases where the physical evidence points so clearly to the negligence of one of the parties as to establish a *prima facie* case.

In the instant case, the plaintiff has failed to establish proof to the effect that the heating pad was present under the baby and connected at the time defendant made his examination. A jury, therefore, could only surmise this fact and upon that conjectural ground impose liability upon defendant. A jury may draw reasonable inferences from the established facts, but it is not to be permitted to speculate as to the facts themselves. *Butrick* v. *Snyder,* 236 Mich. 300; *Paull* v. *McBride,* 273 Mich. 661. Plaintiff failed to meet the burden of proof and make out a sufficient case for the consideration of the jury.

The opinion relied upon as authority for remanding this case for a new trial, *Rodgers* v. *Canfield,* 272 Mich. 562, is inapplicable. That was a malpractice suit against two doctors who acted jointly in treating the plaintiff. It was held that each doctor, while serving with the other, was answerable for his own conduct and also for the negligent acts of the other which he observed or in the exercise of reasonable vigilance should have observed. It was further said, however, that, "For their joint acts of commission or omission both defendants were liable, but any such act by one, in the absence of the other, unless concerted, could not be attributed to the non-participant."

Dr. Bull did not instruct Mrs. Scoby to place the infant upon an electric pad. His only instruction was to keep the baby warm. The record shows that the pad was placed under the child by Mrs. Scoby while the defendant was attending the mother in the delivery room.

In the case of *Wright* v. *Conway*, 34 Wyo. 1 (241 Pac. 369, 242 Pac. 1107), the plaintiff was burned by the application of hot irons or bottles, and this fact, among others, was alleged as negligence on the part of the defendant doctor in a malpractice suit. The court said:

"It does not appear that the defendant did anything more than to suggest or prescribe the hot applications. It is not shown that he applied them, or that he was present when they were applied. If applied by a nurse at the hospital, there is nothing to show that her relation to the defendant was such as to make him responsible for that action. She may have been employed by the plaintiff. Without further showing than that found in this testimony, the defendant would not be liable for the burns or blisters resulting from such hot appications."

In the present case, Mrs. Scoby was employed by the plaintiff and therefore Dr. Bull was not liable for unauthorized negligent acts performed by her out of his presence which he did not observe, or, in the exercise of reasonable vigilance, should have observed. *Malkowski* v. *Graham*, 169 Wis. 398 (172 N. W. 785, 4 A. L. R. 1524).

Reviewing the testimony, it cannot be said that plaintiff sustained the burden of proof in presenting evidence tending to prove that defendant in the exercise of reasonable vigilance should have observed the heating pad.

Mrs. Scoby, who was employed by plaintiff and who was present when the doctor examined the child, was not produced as a witness to testify as to whether or not the heating pad was actually connected at the time of defendant's examination.

Because the record presents no disputed testimony as to whether the heating pad was connected at the

time of defendant's examination of the infant, and because the defendant, under the circumstances, was not legally responsible for the negligent acts of Mrs. Scoby committed out of his presence, the trial court was correct in directing a verdict for defendant.

The judgment is affirmed, with costs to defendant.

BUTZEL, C. J., and WIEST, POTTER, and MCALLISTER, JJ., concurred with CHANDLER, J.