HERTZLER *v.* MANSHUM.

1. NEGLIGENCE — FOOD — POISON IN FOOD — BURDEN OF PROOF — IN-
   STRUCTIONS—LIABILITY OF RETAILER AND MANUFACTURER.

   In an action against a miller and a retailer of flour for
   damages occasioned to plaintiff's decedent by the presence
   of arsenate of lead in flour sold by the miller to the re-
   tailer and by the latter to plaintiff's decedent for human
   consumption, the trial judge was in error in instructing
   the jury that, in order to recover, plaintiff was required
   to show affirmatively that, through the want of ordinary
   care, either of the miller or the retailer, the poison got
   into the flour, since the presence of the poison speaks
   for itself, and, unexplained, evidences negligence, and if
   it was in the flour when furnished to decedent, one or
   both of the defendants are liable unless they can excuse
   themselves, and the ruling complained of placed an un-
   warranted burden upon plaintiff and relieved defendants
   from fighting out between themselves the issue of where
   the blame, if any, lay for the injury done.[1]

2. SAME—MANUFACTURER IMPLIEDLY WARRANTS FOOD TO BE FREE
   FROM POISON—CONTRACTUAL RELATION.

   The general rule that the manufacturer of an article or
   commodity sold to a retailer is not liable to a subsequent
   purchaser, upon an implied warranty, for injuries due to
   defects or impurities therein, based on want of contractual
   relation, does not apply to food stuffs, but in the case of
   food stuffs there is an implied warranty, and the manu-
   facturer is liable to consumers purchasing from retailers
   for breach of the implied warranty arising from foreign
   poisonous substances therein, and there only by reason
   of want of a high degree of care.[2]

3. SAME—IMPLIED WARRANTY IN FOOD, NATURE OF—BREACH OF IM-
   PLIED WARRANTY A TORT.

   The implied warranty reaching from the manufacturer of
   food stuffs to the ultimate purchaser for immediate con-

   [1]Food, 26 C. J. §§ 91, 93, 103, 104; [2]Id., 26 C. J. § 93.
   On liability of manufacturer, packer, or vendor to persons in
   privity of contract, for injuries in defects in article sold, see
   notes in 19 L. R. A. (N. S.) 923; 48 L. R. A. (N. S.) 213; L.
   R. A. 1916B, 879.
   On liability of manufacturer or packer of defective article for
   injury to person or property of ultimate consumer, who pur-
   chased from a middleman, see note in 17 A. L. R. 688.

sumption is in the nature of a representation that the highest degree of care has been exercised, and a breach of such duty, inflicting personal injury, is a wrong in the nature of a tort and not a mere breach of contract to be counted on in assumpsit, and, except in name, and to establish privity between the manufacturer and the ultimate consumer, it is the same thing as negligence.[3]

4. SAME — FOOD — IMMEDIATE CONSUMPTION — MANUFACTURER AND RETAILER MAY BE JOINED AS CODEFENDANTS.

The manufacturer of food stuffs is liable to respond in damages to the ultimate purchaser thereof, for immediate consumption, injured by a foreign poisonous substance therein, and the retailer may be joined as a party defendant and the liability of both may be counted on in tort for negligence or breach of implied warranty.[4]

5. SAME—BURDEN OF PROOF.

The burden rests upon plaintiff to show that the poison was in the flour when purchased from the retailer, and if such fact be established a *prima facie* case is made out against both defendants, and the burden will shift to defendants to excuse themselves.[5]

6. SAME.

If defendant retailer satisfies the jury that the flour was delivered by him to plaintiff's decedent in the same container and exactly as furnished by the manufacturer, and that the poison did not get into the flour while in his possession, then he is not liable; and if the manufacturer satisfies the jury that, in making, packing, and marketing the flour, the highest degree of care was exercised, then no actionable negligence or breach of duty exists, and plaintiff is without remedy.[6]

7. SAME—FOOD—STATUTE, APPLICABILITY.

Plaintiff's count on Act No. 344, Pub. Acts 1917, relating to sanitary conditions and prohibiting diseased, decomposed, putrid, infected, or tainted food products from being kept in or distributed from places where food products, intended for human consumption, are kept, is not well planted.[7]

8. SAME — SEALED PACKAGES — WHETHER FLOUR SACKS SEALED PACKAGES NOT CONTROLLING.

The question as to whether the sacks of flour put up at

[3]Food, 26 C. J. § 93; [4]Id., 26 C. J. § 90; [5]Id., 26 C. J. § 101; [6]Id., 26 C. J. §§ 91, 92; [7]Id., 26 C. J. § 101.

the mill for the trade are, in the eye of the law, sealed packages, *held*, not controlling of plaintiff's right to recover, since that rests upon the fact that poison was in the flour, and when and how it got there involve questions of fact not to be ruled by the character of the container, but by evidence of actual care exercised, or want thereof.[8]

9. SAME—FOOD—"IMMEDIATE CONSUMPTION" DEFINED.
Plaintiff's decedent was a purchaser within the term "for immediate consumption," a term employed to eliminate intermediate agencies between the manufacturer and the ,purchaser for consumption, and signifies that the food product has reached the consumer and is withdrawn from the marts of trade, but bears no relation to the time of actual consumption by the purchaser, who holds it at his peril if fit when purchased.[9]

10. EVIDENCE—IDENTITY OF THING ANALYZED SHOULD BE SHOWN.
The court is not inclined to relax long established rules regulating the identity of a thing or article analyzed when the analysis is offered in evidence.[10]

11. APPEAL AND ERROR—ANALYSIS, REJECTION OF, NOT PREJUDICIAL WHERE LATER ADMITTED.
If the exclusion of an analysis of the flour, on the ground that it was not sufficiently identified, was error, it was without prejudice, in view of the fact that a later sample was analyzed and the result admitted in evidence.[11]

12. NEGLIGENCE—TRIAL — REQUESTED INSTRUCTION AS TO USE OF SECOND-HAND SACKS PROPERLY REFUSED.
A requested instruction that, if the employees of the miller sometimes used second-hand paper flour sacks or used such sacks in such a way that they might become mingled with new sacks and be used for the delivery of flour, such facts, if found, would be sufficient upon which to find negligence against the miller, *held*, properly refused.[12]

13. SAME—REQUESTED INSTRUCTION NOT RELEVANT.
A requested instruction that, if the jury found that the retailer kept arsenate of lead in bulk in his store in close proximity to the flour afterwards sold to plaintiff, at a time when, to his knowledge, persons of evil minds might take advantage of opportunities to do mischief by poisoning the flour, and that if they further found that he took no

[8]Food, 26 C. J. § 91; [9]Id., 26 C. J. § 91; [10]Evidence, 22 C. J. § 852; [11]Appeal and Error, 4 C. J. § 2999; [12]Food, 26 C. J. § 104.

precautions to guard against such mischief, they would, in such case, be justified in finding the retailer negligent, *held*, objectionable; the inference therein declared being too far fetched.[13]

14. SAME—EVIDENCE—ADMISSIBILITY.

It was not reversible error to permit the retailer to testify that his codefendant, from whom he had purchased the flour in question, was a reputable concern.[14]

15. SAME—OPINION TESTIMONY—ADMISSIBILITY.

There was no error in permitting the retailer to testify to the care he exercised in putting up and handling arsenate of lead, or in not allowing another witness to give an opinion as to whether it was proper for the retailer to keep his carton of arsenate of lead adjacent to scales in his store.[15]

16. SAME — EVIDENCE — TESTIMONY AS TO SICKNESS CAUSED TO OTHERS BY SAME BRAND OF FLOUR—ADMISSIBILITY.

The admissibility of testimony by a witness that he purchased a sack of the same brand of flour from defendant retailer, and that it caused sickness, *held*, to depend upon the nature of the sickness; if there was arsenate of lead in the flour and it was milled by defendant miller, it was admissible; otherwise not.[16]

Error to Kent; Perkins (Willis B.), J.    Submitted June 11, 1924.    (Docket No. 45.)    Decided October 6, 1924.

Case by Mae Hertzler, administratrix of the estate of Christian Hertzler, deceased, against Everil J. Manshum and Bessie H. Hanchett for the alleged negligent killing of plaintiff's decedent.    Judgment for defendants.    Plaintiff brings error.    Reversed.

*William J. Landman* and *Fred P. Geib,* for appellant.

*Ward & Strawbecker,* for appellee Manshum.

*Earl F. Phelps.* for appellee Hanchett.

WIEST, J.    Defendant Manshum conducted a store

---

[13]Food, 26 C. J. § 104; [14]Id., 26 C. J. § 103; [15]Evidence, 22 C. J. § 615 (1926 Anno); [16]Id., 22 C. J. § 840.

in the city of Grand Rapids and sold wheat flour at retail. Defendant Hanchett, under the name of L. & L. Jenison Company, operated a mill at Jenison, Ottawa county, and manufactured wheat flour known as "Pride of the Valley." Christian Hertzler was a householder in Grand Rapids and, July 11, 1919, his wife ordered flour from defendant Manshum and was furnished with two 25-pound sacks of "Pride of the Valley" flour. Bakings from this flour caused Mr. Hertzler to be sick, indicated lead poisoning, and an examination disclosed arsenate of lead in the flour. This suit is prosecuted by Mae Hertzler, as administratrix of the estate of Christian Hertzler, deceased, to recover damages occasioned her decedent by such poison. The declaration counted on an implied warranty of the flour, violation of a statutory mandate and negligence. The case was submitted to the jury upon the issue of actionable negligence only, and verdict rendered for defendants. Plaintiff reviews by writ of error, insisting on the right to go to a jury on all three issues and questions other rulings at the trial. Both defendants denied liability. The retail dealer insists the flour was in sacks put up by the miller and he is immune under the rule announced by some courts with reference to food stuffs in sealed containers or original packages put up for delivery to the trade. The miller insists on immunity because the flour was in sacks readily opened, claims the rule of sealed containers does not apply and also invokes want of contractual relation with the consumer. The very able briefs of counsel take a wide range but we think the decisive issues within a very limited compass.

Arsenate of lead is a poison, wholly foreign to flour, looks like flour and when mixed therewith cannot be distinguished therefrom by the eye. Defendant Manshum sold arsenate of lead in quantities wanted, keeping the same in a container in his store. It is claimed no arsenate of lead was kept in the flour mill,

but some was in a store operated in connection with the mill. Under the instruction given the jury by the learned trial judge, plaintiff, in order to recover, was required to show affirmatively that, through the want of ordinary care, either of the miller or the dealer, the poison got into the flour. If the poison was in the flour when furnished by the dealer to plaintiff's decedent one or both defendants are liable unless they can excuse themselves. Even ordinary care ought to keep arsenate of lead out of flour. *Prima facie* the poisoned flour was the result of some one's negligence. It was not and could not have been the result of deterioration or change. The poisoned flour speaks for itself; unexplained it evidences negligence, for no proof of negligence could be more direct than the flour with arsenate of lead in it. If the poison was in the flour when delivered by the dealer, plaintiff was not bound to show how or when it became so mixed or offer substantive evidence of want of care on the part of either or both defendants. The ruling, confining plaintiff's right of recovery to an affirmative showing of negligence on the part of defendants placed an unwarranted burden upon her and relieved defendants from fighting out between themselves the issue of where the blame, if any, lay for the injury done, and was erroneous.

Defendant Hanchett contends for nonliability, under the general rule that the manufacturer of an article or commodity sold a retail dealer is not liable to a subsequent purchaser upon an implied warranty, for injuries due to defects or impurities therein. This general rule is based on want of contractual relation. But food stuffs do not fall within the rule of want of privity between the manufacturer and ultimate consumer with a retail dealer intermediate. Flour is a food product, prepared and distributed for human consumption, and it comes from the manufacturer to the dealer, for sale to consumers, with the guarantee

to consumers that it is free from poisonous foreign substances. The law, recognizing the imperative need of consumers of food stuffs to rely upon the care of manufacturers thereof, and the inability of consumers, in a case like the one at bar, to detect injurious impurities or poisonous substances therein, and the complex system of modern production and distribution, holds the manufacturer, who prepares food stuffs, destined to be sold to and consumed by the public, liable to consumers purchasing from a retail dealer, for a breach of the implied warranty, arising from foreign poisonous substances therein, and there only by reason of want of a high degree of care.

The cases cited by counsel and other cases upon the question of the liability of the manufacturer of food stuffs to the ultimate consumer, appear hopelessly at variance. Some deny liability at all, some recognize liability upon an implied warranty of wholesomeness, some plant liability upon an implied negligence in case of foreign poisonous substances, while others hold liability depends upon a substantive showing of negligence. We experience no inclination to enter upon a review of such cases. We have before us a case of a foreign poisonous substance in flour, and our opinion is confined to such a case.

The ultimate contemplated destination of wheat flour is human consumption. The manufacturer knows this and owes a duty to the ultimate consumer of his product to guard against poison therein, and when he markets it he impliedly warrants it free from poison and the purchaser thereof, for consumption, has a right to and must, of necessity, rely upon such implied warranty, and such duty, represented as performed and relied upon as having been performed, bring the maker and consumer of such food product into privity, and for an injury arising out of a breach of such duty, impliedly warranted as performed, the sufferer may reach the one in fact inflicting the injury.

The implied warranty, so-called, reaching from the manufacturer of food stuffs to the ultimate purchaser for immediate consumption is in the nature of a representation that the highest degree of care has been exercised and a breach of such duty inflicting personal injury is a wrong in the nature of a tort and not a mere breach of contract to be counted on in assumpsit. Except in name and to establish privity between the manufacturer and the ultimate consumer it is the same thing as negligence.     Plaintiff's case, in its last analysis, is bottomed on negligence.

We are fully persuaded that the manufacturer of food stuffs is liable to respond in damages to the purchaser thereof, for immediate consumption, injured by a foreign poisonous substance therein; that the retail dealer may be joined as a party defendant and the liability of both may be counted on in tort for negligence or breach of implied warranty as mentioned.

As the case must go back for a new trial we will briefly point out the issues.     The burden rests upon plaintiff to show that the poison was in the flour when purchased from defendant Manshum.     If such fact is established plaintiff will make out a *prima facie* case against both defendants and the burden will shift to defendants to excuse themselves.     If defendant Manshum satisfies a jury that the flour was delivered by him to plaintiff's decedent in the same container, and exactly as furnished him by the manufacturer; in other words that the poison did not get into the flour while in his possession, then he is not liable, and excuse, if any, is to be made by the manufacturer.     If the manufacturer satisfies a jury that, in making and packing and marketing the flour, the highest degree of care was exercised, then no actionable negligence or breach of duty exists and plaintiff is without remedy. For a discussion of the cases on the subject, see *Davis v. Van Camp Packing Co.*, 189 Iowa, 775 (176 N. W. 382).

Plaintiff's count on Act No. 344, Pub. Acts 1917 (Comp. Laws Supp. 1922, § 6535 [14, 15]), is not well planted. That act relates to sanitary conditions and prohibits diseased, decomposed, putrid, infected or tainted food products from being kept in or distributed from places where food products, intended for human consumption, are kept.

Much is said in the briefs upon the question of whether the sacks of flour put up at the mill for the trade are in the eye of the law sealed packages. While in some of the reported cases the answer to such question has constituted a determining factor, we do not feel that it is decisive here. Plaintiff's rights do not rest upon the character of the container employed, whether capable of being misused or tampered with or not, but upon the fact that the poison was in the flour. When and how the poison got there involve questions of fact not to be ruled by the character of the container, but by evidence of actual care exercised, or want thereof.

Plaintiff's decedent was a purchaser within the term "for immediate consumption." The term "for immediate consumption" is employed to eliminate intermediate agencies between the manufacturer and the purchaser for consumption. It signifies that the food product has reached the consumer and is withdrawn from the marts of trade. Time of actual consumption by such a purchaser bears no relation to the term. Perishable food stuffs are subject to deterioration in course of time, and, if wholesome when purchased, they should be consumed while fit, and are held by the purchaser at his peril. But this is not what is meant by a purchase for "immediate consumption." Besides, flour does not take on arsenate of lead with age and a housewife may have enough flour in the bin to avoid "drowning the miller" when mixing dough.

Some of the flour was sent away for analysis. On the ground that an analysis, sought to be shown by

plaintiff, did not sufficiently identify the flour in question such evidence was excluded.     The question is close but we are not inclined to relax long established rules regulating the identity of a thing or article analyzed.     Later a sample of the flour was analyzed and the result of such analysis admitted in evidence. So the question of the exclusion of the first analysis is not of much importance.

Plaintiff requested the court to instruct the jury:

"If you find that employees of defendant Hanchett sometimes used second-hand paper flour sacks to put flour into for delivery to customers, or used second-hand flour sacks in such a way that they might become mingled with new sacks and used for the delivery of flour, I charge you that such facts if found, would be sufficient upon which to find negligence against defendant Hanchett."

This request was properly refused.     Plaintiff also requested this instruction:

"If you find that defendant Manshum kept arsenate of lead in bulk in his store in close proximity to the flour afterwards sold to plaintiff, at a time when to his knowledge persons of evil minds might take advantage of opportunities to do mischief by poisoning the flour, and you further find that he took no precautions to guard against such mischief, you would, in such case, be justified in finding defendant Manshum negligent."

The inference therein declared is too far fetched. It was not reversible error to permit defendant Manshum to testify that his codefendant, from whom he had purchased the flour in question, was a reputable concern.     The court was right in permitting defendant Manshum to testify to the care he exercised in putting up and handling arsenate of lead, and also in not allowing another witness to give an opinion as to whether it was proper for defendant Manshum to keep his carton of lead arsenate adjacent to scales in his store.

Upon this record we cannot say whether there was error committed in refusing to permit a witness to testify to a purchase of "Pride of the Valley" flour from defendant Manshum and sickness occasioned by its use.    We are not informed of the nature of the sickness or what, if anything, was the matter with the flour so purchased.    If there was arsenate of lead in such flour sold by defendant Manshum, and milled by the other defendant, we think it admissible, otherwise not.

The judgment is reversed and a new trial granted, with costs to plaintiff.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.