ELIZABETH NOONE, Appellant, *v.* FRED PERLBERG, INC., Respondent.

First Department, June 28, 1944.

*John Kirkland Clark* of counsel (*Xavier N. Sardaro* with him on the brief; *Clark & Baldwin,* attorneys), for appellant.

*Saul Gordon* of counsel (*Eli Davidoff,* attorney), for respondent.

Dore, J. While wearing an evening gown with a glazed double netted skirt manufactured by defendant, plaintiff was seriously injured when the netting of the dress ignited, instantly enveloping her in flames. The issue is whether plaintiff's proofs were sufficient to support a jury's verdict in her favor against defendant manufacturer, on the ground that the netting was treated with a nitro-cellulose sizing that rendered it inherently dangerous when used for the purpose for which it was intended.

At the close of plaintiff's case, defendant rested and offered no proof. Reserving decision on defendant's motions to dismiss and for a directed verdict in defendant's favor, the trial court submitted the issues of fact to the jury who rendered a unanimous verdict in plaintiff's favor for $5,000. Thereupon the trial court granted defendant's motions to set aside the verdict, and for a directed verdict in its favor, on the ground that there was a fatal deficiency in plaintiff's proof that the dress as manufactured and delivered to the purchaser was inherently dangerous. Plaintiff appeals.

On or about November 17, 1937, plaintiff bought an evening gown at the Fashion Shop, a retail store in Burlington, Vermont. The dress consisted of a black rayon taffeta slip and a full double netted skirt starting about the waist or breast and hanging down to within a half inch of the floor. At the time the dress was purchased, the netting was shiny and very stiff, and stood out from and over the underlying slip. The dress required shortening, and the retail shop had it altered to make it shorter. On December 31, 1937, plaintiff picked it up, brought it home, and wore it for the first time that evening at a New Year's Eve party in the Ethan Allen Club, Burlington, Vermont, attended by a considerable number of people. The guests were sitting, walking about or standing, and people were smoking. While walking across the cocktail lounge of the club, plaintiff heard a crackling sound, and saw her dress was aflame. Two gentlemen who were present testified at the trial. They heard the crackling sound, saw the flame, and threw their tuxedos

over plaintiff's head. Plaintiff and her witnesses testified that the flame flashed up in one blaze, almost instantaneously enveloping plaintiff. Concededly, she was seriously burned on the back, shoulders and under the left arm, necessitating her confinement to a hospital for about two months wherein she secured treatment for second and third degree burns. The quantum of the damages is not questioned.

Plaintiff established that the dress was purchased by the retailer from defendant manufacturer and that when so purchased and delivered to the retailer and sold by him to plaintiff, the netting of the dress had a glazed and shiny finish. The only alteration shown after the dress was delivered to the retailer was the shortening of the dress.

Plaintiff called an expert, Jerome Alexander, a chemical engineer of forty years' experience. In answer to a hypothetical question including facts about the glazed netting of the overskirt and the accident as above outlined, he testified that some form of nitro-cellulose sizing was used on the netted overskirt of the dress that ignited. Nitro-cellulose, he stated, was guncotton, a chemical form of pyroxylin, the basis of gunpowder. He also testified to an experiment that he made with the netting of a similar dress, identical in style, and purchased by the same retailer from defendant at or about the same time the retailer purchased plaintiff's dress. The expert treated a portion of the netting of that dress with a solution of nitro-cellulose, and testified that it flared up in a flash of flame when touched with a lighted cigarette or match. He could not thus ignite the unsized netting, testifying in this respect that he had to hold a lighted match against the unsized netting to get it to burn, and when it did burn, it burned very slowly. He said that neither gelatine nor starch would produce the flash flame which the sized or tested material produced.

On cross-examination, he testified that after the last World War there were large quantities of nitro-cellulose; that commercial uses were found for it, and nitro-cellulose sizing and finishings were used by manufacturers on a large scale; but he said they were not used extensively in sizing nets, because of the inherent danger. He admitted that the percentage of nitro-cellulose in a solution may vary. The percentage he used in conducting the test was a standard coating solution that he had in his laboratory.

The plaintiff's testimony was that the sized netting in the dress was consumed by the flames. Accordingly no evidence was offered as to the nature of the sizing on the netting of the

dress except the testimony of the expert. His testimony was based upon uncontradicted evidence that the net overskirt of the dress, as manufactured by defendant, delivered to the retailer and sold to plaintiff, had been stiffened with a glazed and shiny substance, and that the whole netting was consumed at the time of the injury, almost instantaneously, in a flash of flame. The black slip of the dress in evidence was practically untouched by fire, indicating rather clearly the highly inflammable nature of the netting in contrast to the unsized slip.

Defendant had moved to dismiss the complaint for failure to state facts sufficient to sustain a cause of action but this motion was denied at Special Term (*Moss* v. *Fred Perlberg, Inc.*, 29 N. Y. S. 2d 922) and defendant did not appeal.

On this appeal, after trial, defendant contends that plaintiff failed to prove, as alleged in the complaint and bill of particulars, that the dress ever came in contact with a lighted cigarette; that the trial court properly directed a verdict for defendant, because plaintiff failed to prove that the net of the dress was sized as claimed by her, or that it was inherently dangerous; that such sizing did not create a known danger incident to the normal use of the dress for attire, and not to be brought in contact with lighted cigarettes or matches; that the proximate cause of the accident was not the sizing, if it existed, but the negligent act of a third party bringing a lighted cigarette or match in contact with the dress; and, finally, that there was no competent evidence that any nitro-cellulose had ever been used in sizing any part of plaintiff's dress.

The rule in this State is now settled that when a manufacturer sells an inherently dangerous article for use in its existing state, the danger not being known to the purchaser and not patent, and notice is not given of the danger or it cannot be discovered by reasonable inspection, the manufacturer is legally liable for personal injuries received by one who uses the manufactured article in the ordinary and expected manner. (*Thomas* v. *Winchester*, 6 N. Y. 397; *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382; *G. C. P. Fire Relief Assn.* v. *Sonneborn Sons*, 263 N. Y. 463, 468; *Crist* v. *Art Metal Works*, 230 App. Div. 114, 117, affd. 255 N. Y. 624; *Comrs. State Insurance Fund* v. *City Chemical Corp.*, 290 N. Y. 64; 4 Shearman & Redfield on Negligence [Rev. ed.] § 654 *et seq.*; Restatement, Torts, § 395 *et seq.*)

In *Crist* v. *Art Metal Works* (*supra*) the defendant manufactured toy revolvers for use by children; plaintiff, dressed in

Santa Claus costume, was injured when flames from the revolver ignited the material used as Santa Claus' whiskers and the soft cotton forming part of the costume. This court said: '' The manufacturer must be deemed to have known that children during the Christmas season, in portrayals of Santa Claus or at other times in the production of plays or pageants, or in attendance at gatherings, would probably be garbed in inflammable material and that to place a pistol of this character in the hands of a child might result in damage.''

Underlying the manufacturer's liability is the danger reasonably to be foreseen from the intended use of the article. (*Liedeker* v. *Sears, Roebuck & Co., Inc.,* 249 App. Div. 835, affd. 274 N. Y. 631.) Clothing is worn to cover, adorn and protect the human body. Ordinarily, as the witness Alexander testified, when clothing is brought into contact with a lighted cigarette or direct heat, the damage is slight consisting of a small hole in the cloth or a slow burning easily extinguishable. Plaintiff's proof showed this to be true of the black slip of the dress, which remained practically untouched by the flames that consumed the netting which ballooned out in a burst of fire, causing the severe injuries for which plaintiff seeks damages.

After reviewing the evidence, we reach the conclusion that plaintiff established a prima facie case, and that the issues were for the jury. In *Comrs. State Insurance Fund* v. *City Chemical Corp. (supra)* a judgment in defendant's favor entered upon the dismissal of the complaint by the trial court was reversed and a new trial ordered. There a bottle labeled '' pyruvic acid '' exploded. The substance in the bottle was not specifically identified, as its contents were destroyed in the explosion. Experts testified that pyruvic acid, chemically pure, would not generate explosive gases. The Court of Appeals considered this sufficient to raise a question of fact for the jury.

In this case, an expert having forty years of experience with sizings testified that the composition which produced the glazed and shiny appearance on the netting in question and the instantaneous flash of flame was some form of nitro-cellulose, a highly dangerous explosive. The manufacturer knew or should have known that such an evening gown would be worn to dinners and cocktail parties where large numbers of persons gather and many indulge in smoking.

As stated by Lord MANSFIELD, C. J., in *Blatch* v. *Archer,* 1 Cowp. 63, 65: '' It is certainly a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have

contradicted.'' (2 Wigmore on Evidence [3rd ed.] § 285, p. 163 *et seq.*) Defendant manufacturer did not adduce any evidence to show the nature of the sizing used in the dress. The jury could properly take most strongly against defendant the evidence adduced in plaintiff's case (*Milio* v. *Railway Motor Trucking Co.,* 257 App. Div. 640, 642) and find that plaintiff's injuries were proximately caused by the inherently dangerous substance used by defendant in the manufacture of the gown.

The judgment appealed from should be reversed, with costs, defendant's motions to set aside the verdict and to direct a verdict in its favor should be denied, and judgment should be entered in plaintiff's favor for the amount of the jury's verdict, with interest and costs.

MARTIN, P. J., TOWNLEY, GLENNON and COHN, JJ., concur.

Judgment unanimously reversed, with costs, defendant's motions to set aside the verdict and to direct a verdict in its favor denied, and judgment directed to be entered in plaintiff's favor for the amount of the jury's verdict, with interest and costs.