**Donald VROMAN, a Minor, by James R. Vroman, his next friend, Plaintiff-Appellee,**

v.

**SEARS, ROEBUCK & CO. and George D. Roper Corporation, Defendants-Appellants.**

**No. 17216.**

United States Court of Appeals
Sixth Circuit.

Nov. 24, 1967.

Rehearing Denied Jan. 24, 1968.

Louis A. Lehr, Chicago, Ill., for appellants, George E. Bushnell, Jr., Gilbert E. Gove, Miller, Canfield, Paddock & Stone, Detroit, Mich., Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., on brief.

Philip C. Kelly, Jackson, Mich., for appellee, Kelly, Kelly & Kelly, Jackson, Mich., on brief.

Before EDWARDS, CELEBREZZE and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This action was brought by the plaintiff-appellee to recover damages for personal injuries suffered by him when in the operation of a gasoline powered rotary lawn mower. The mower had been sold by defendant-appellant Sears, Roebuck & Co. under its trade name "Craftsman," and had been manufactured by its wholly owned subsidiary, the defendant-appellant George D. Roper Corporation. The parties will herein be referred to as they were in the trial court, and the corporations as "Sears" and "Roper" respectively.

■ At the time of the occurrence giving rise to this action, the then seven year and two months old plaintiff was operating a mower which had been purchased almost exactly three years earlier from Sears by his grandfather. Some months prior to the accident, the grandfather gave the lawn mower to plaintiff's uncle, who operated a gasoline service station at Homer, Michigan. Plaintiff was cutting grass at this service station when he suffered the injury complained of. The lawn mower was not self-propelled, and moved only when and to the extent that it was pushed by the operator. It is conceded by the parties and here determined that the law of Michigan is applicable. This obviates the need for discussion of the lack of privity of contract between the plaintiff and the defendants, which might elsewhere have been urged as a defense. Bahlman v. Hudson Motor Car Co., 290 Mich. 683, 288 N.W. 309 (1939); Bosch v. Damm, 296 Mich. 522, 296 N.W. 669 (1941); Spence v. Three Rivers Builders & Masonry Supply, Inc., 353 Mich. 120, 90 N. W.2d 873 (1958); Comstock v. General Motors Corp., 358 Mich. 163, 99 N.W.2d 627 (1959); Manzoni v. Detroit Coca-Cola Bottling Company, 363 Mich. 235, 109 N.W.2d 918 (1961); Hill v. Harbor Steel & Supply Corp., 374 Mich. 194, 132 N.W.2d 54 (1965); Piercefield v. Remington Arms Co., Inc., 375 Mich. 85, 133 N.W.2d 129 (1965).

The evidence establishes that the mower was operated over a ball of wire, and that a piece of the wire entered the left eye of the plaintiff, resulting in permanent loss of sight in that eye. The roll or ball of wire was received in evidence, and unrebutted testimony established that a bit of wire of similar nature was removed from plaintiff's eye. The wire is a fine copper wire of the general type used in winding small transformers or armatures. While there is some testimony indicating that at the time of the accident it was in a loose roll about the size of a basketball, in size it now more nearly resembles a small, flat skein of knitting yarn.

Trial of the cause to a jury resulted in a verdict for plaintiff in the amount of $75,000 and this appeal has been perfected from the judgment entered thereon. The parties are in agreement as to the questions presented by the appeal, the first of which is whether the District Court erred in submitting the issue of alleged negligence to the jury. Such alleged negligence related, first, to Sears's failure to warn that foreign objects could be expelled from the mower's discharge chute and, second, to the alleged improper design of the machine.

■ In support of its contention that no warning was given, plaintiff first offered and there were received in evidence copies of four Sears's advertisements which appeared in Detroit newspapers of identical or similar lawn mowers which contained no warnings of any kind. However, these were received in evidence without any showing that plaintiff's grandfather (the purchaser of the mower here in question) ever saw any such advertisement and the objection to their introduction was well taken. Without relying on this further circumstance as a ground for such exclusion, it is observed that a newspaper advertisement setting forth the possible dangers to users of the product sought to be sold would be unique. However, a failure to warn was established separately by the grandfather, who testified that no warning was given him at the time of purchase and that the mower was not accompanied by any instructions or safety rules other

than the verbal instructions of the salesman as to how to start and stop it.

The grandfather further testified that when the mower was in operation "you wouldn't want to get hit with anything that was underneath it coming out of [the discharge chute]." He testified that when he turned the mower over to his son he told him of this danger, and that the son knew of it "because he had run a mower before. * * *" The record then establishes that that son (plaintiff's uncle) and plaintiff's parents discussed his using the mower to cut grass "to earn a little extra money," and that they "instructed him on the general use of the lawn mower and, of course, told him to stay away from the discharge chute and showed him how to push it." The uncle and the parents both together and separately instructed the plaintiff in the mower's operation, it being recognized that such operation was "dangerous, everyone knows that." Plaintiff's uncle further testified as follows:

"A. We watched him, I know, the first time he used it, you know, to get him started, and he seemed to be able to manage it all right.

"Q. Now, when you were telling him these things, did you tell him when he was in the station or at your house or at his folks house or did you show him—

"A. We demonstrated to him on the lawnmower.

"Q. That is it. Thank you. It takes me a long time to get the question out but that is it. You demonstrated it to him on the lawnmower?

"A. Yes, that is right.

"Q. Will you step down, sir, with this lawnmower and show the ladies and gentlemen of the jury and the rest of us—let me turn it around so that you are full face—where you told Donald to stand when he was operating it?

"A. Stand behind the lawnmower so that you don't get hit from anything coming out of the exhaust chute or discharge chute."

In the light of this testimony and the record as a whole it is clear that the plaintiff himself, his grandfather (who purchased the mower), his parents and the uncle under whose direction he was ostensibly working when injured all knew of the danger existing by reason of the possible projection of foreign objects from the discharge chute, and any additional warning given to any or all of them would have been merely cumulative and thus without legal significance. See Morrocco v. Northwest Engineering Co., 310 F.2d 809, 810 (6th Cir. 1962); Sawyer v. Pine Oil Sales Co., 155 F.2d 855 (5th Cir. 1946); Hobart v. Sohio Petroleum Company, 255 F.Supp. 972 (N.D.Miss.1966); Pedroli v. Russell, 157 Cal.App.2d 281, 320 P.2d 873, 876 (1958). Plaintiff offers no clue as to the manner in which a warning to his grandfather of a danger already known to him three years prior to the occurrence in controversy could have been a proximate cause thereof, and we hold that it could not.

Had the court's instructions to the jury been inconsistent with this conclusion they would have been prejudicially erroneous, but such is not the case. On the contrary, the court's charge included the following:

"You are instructed that there is no duty to warn a person of a danger in the operation of a product when such danger is already known to the user.

"Therefore, even though you find there was a danger present in the operation of the lawn mower involved in this action, which danger caused an injury to the plaintiff, I charge you that there was no duty on the part of defendants to warn of this danger, and I charge you that you may not find any liability based upon the defendants' failure to warn plaintiff, if you find that such danger was already known to the plaintiff herein."

As has been indicated, the record affirmatively discloses that plaintiff's older relatives had pre-existing knowledge of the danger, and that this seven year and two months old boy also had such knowledge. Having thus had before it only this un-

challenged evidence and the trial judge's correct statement of the applicable law, the jury could not have resolved this issue negatively to the defendants. See: Delahunt v. Finton, 244 Mich. 226, 221 N.W. 168 (1928); Hoholik v. Metropolitan Life Ins. Co., 289 Mich. 242, 286 N.W. 228 (1939); Deffenbaugh v. Interstate Motor Freight Corp., 254 Mich. 180, 235 N.W. 896 (1931). Carrying this line of reasoning a step further, it may be said that this combination of proven fact and statement of law was tantamount to an instructed verdict on this issue, and standing alone the error in receiving the newspaper advertisements and other evidence of a lack of warning would therefore not have been prejudicial. Whether in cumulative effect with other error prejudice resulted will be subsequently determined.

■ We pass to a consideration of the second aspect of the first question presented by this appeal, namely whether the court erred in submitting to the jury the issue of alleged breach of implied warranty or negligence in the design of the mower. At the outset of this phase of our discussion, we point out counsel and the trial judge throughout the briefs and the instructions properly use such phrases as "breach of implied warranty" and "negligence of design" synonymously and interchangeably in context, since under Michigan law even though a plaintiff may claim "under the theory of an implied warranty, the real question is whether or not defendant was negligent." Ebers v. General Chemical Co., 310 Mich. 261, 275, 17 N.W.2d 176, 181 (1945); Hertzler v. Manshum, 228 Mich. 416, 423, 200 N.W. 155, 157 (1924); Spence v. Three Rivers Builders & Masonry Supply, Inc., 353 Mich. 120, 90 N.W.2d 873 (1958). In the present case there is no question of any mechanical or physical failure or malfunction of the device, the mower having been in the same state of repair after as prior to the accident. Thus as a matter of both fact and law any breach of implied warranty which may have occurred must of necessity have resulted from some fault, or negligence, in its design.

It accordingly becomes apparent that the duty allegedly breached by the defendants was the production and marketing of an unsafe or dangerous device which in normal operation might reasonably be expected to result in injury to its user. In order to make a determination as to whether such a breach occurred it obviously becomes necessary to provide the trier of fact with a standard against which to make a comparison.* In such a situation it is at least not unusual for the party bearing the burden of proving such a breach to offer evidence as to the state of the art at the time of the design, manufacture and sale of the device in question. E. g., Cheli v. Cudahy Bros. Co., 267 Mich. 690, 255 N.W. 414 (1934); Ketterer v. Armour & Co., 247 F. 921, L.R.A.1918D, 798 (2d Cir. 1917); Reynolds v. Security Trust Co., 246 Mich. 670, 225 N.W. 575 (1929); Purkey v. Sears, Roebuck & Co., 220 F.2d 700 (5th Cir. 1955); McMeekin v. Gimbel Bros., Inc., 223 F.Supp. 896 (W.D.Pa.1963). In the case now before us the court in its charge made reference to the "state of the industry art," but both the record and a colloquy following the court's charge and prior to submission of the case to the jury disclose that the state of the art was not established by evidence. In that exchange between the court and counsel, the following appears:

[Attorney for plaintiff]: * * * "I object to the instruction requested by the defendants that no one can be held to a higher degree of care than the

---

* We are acutely aware of the evidence establishing that the placement of the discharge chute made it possible for an object therefrom to pass within nine inches of the right end of the operator's handle. Whether evidence of such proximity alone not supplemented by evidence of the position an operator might reasonably be expected to take in normal operation is enough to permit the negligence of design issue to go to the jury in the face of the argument that to do so is to let the jurors enter the area of speculation is an issue we are not here required to pass upon.

standards in the industry and that, if not substantially different that [sic] the other mowers, that is this mower in suit, then the jury must find for the defendants, *for the reason that there is no evidence in the case as to the standards in the industry from which the jury could find any industry standards,* and again further repetition that the jury must find for the defendants, as being error and prejudicial to the plaintiff. (Emphasis supplied.)

"The Court: Did I correctly understand you in saying that there is no testimony in the case upon which the jury could find any standard in the industry?

[Attorney for plaintiff]: "Yes, you did, your Honor. That is, at the time the mower was made and sold."

This colloquy, as well as the record itself, clearly discloses that in lieu of providing the jury with a state of the art criterion plaintiff offered to it descriptive material promulgated by the American Standards Association at the behest of the Lawn Mower Institute, Inc. (later known as the Outdoor Power Equipment Institute, Inc.). In connection with these standards, the trial court charged as follows:

"There were received in evidence American Standard Safety Specifications for power lawn mowers which were not formally adopted until 1960, some two or more years after the design and manufacture of this lawn mower. I charge you that these defendants are chargeable only with such information of developments in the field of safety and design as were available to them at the time of the manufacture, and you may consider these standards on that issue only if you find as a matter of fact, from the evidence, that such standards were circulated and known to the defendants, or could have been known by them by the exercise of due care at and before the time this particular mower was designed and manufactured.

"I charge you that since the American Standard Safety Specifications for power lawn mowers are intended as a guide to manufacturers, the consumer and the general public, and that the existence of an American Standard does not in any respect preclude any party who has approved the standard from manufacturing, selling or using products, processes or procedures not conforming to the standard, and that American Standards are reaffirmed or revised to meet changing economic conditions and technological progress. The Standards are not binding upon anyone whether or not that individual or company has approved the standard, and, therefore, are not binding on either of the defendants in this case. However, while the standards are not binding on the defendants, the jury may consider them on the issue of determining whether the defendants observed their duty of keeping abreast of and being informed of developments in the field of safety in the design and manufacture of rotary power mowers such as the one here involved."

■ An issue for jury determination, as the court phrased it in its charge, "as to whether defendants observed their duty of keeping abreast of and being informed of developments in the field of safety in the design and manufacture of rotary lawn mowers such as the one here involved" was created when plaintiff offered evidence tending to show what the defendants knew or should have known about the then existing ASA specifications. Had plaintiff contented himself with such showing no problem would exist in this regard. However, plaintiff did not stop there but went on to offer in evidence the subsequently promulgated ASA standards.

■■ The defendants objected strenuously to the receipt of the standards in evidence. Their first objection was based on the fact that, as shown from the foregoing quotation from the court's charge, these specifications were not in existence at the time of the manufacture and sale of the subject mower. Treating with the converse of this situation and speak-

ing for the Tenth Circuit Court of Appeals, Judge Murrah stated:

"[A]ppellants complain of the refusal of the trial court to admit certain other rules and regulations of the Liquified Petroleum Administrator of the State. These rules were promulgated * * * after [the butane system which exploded was installed]. Obviously, the rules and regulations were not in force at the time of the installation and were not admissible as evidence on the issue of negligence." Franklin v. Skelly Oil Co., 141 F.2d 568, 572, 153 A.L.R. 156 (10th Cir. 1944).

In the portion of the charge above set forth the court presented an accurate statement of the law with reference to the consideration to be given to specifications recognized by an industry and available to designers, manufacturers and vendors of devices dealt with therein. However, it failed, in our view, to provide an adequate instruction (if, indeed, this is possible, which is subject to doubt) concerning a publication promulgated subsequent to sale. A corollary vice exists in the difficulty (again, if not the impossibility) of eliminating from the minds of the jurors the persuasive weight of these documents in their published form, in which they possess all of the attributes of impressive scientific treatises. Further, the exhibits are not limited to portrayals of a mower such as that used by this plaintiff, but invite improper comparison by, for example, depicting mowers where the discharge chute is in front of both right wheels instead of between them, as was the case with this mower. Aside from other objections urged with reference to these exhibits, which are not here passed upon, it is determined that they were improperly received in evidence for the reasons stated.

■ While we would have scant hesitation in holding the error in receiving the ASA specifications in evidence to be prejudicial, beyond doubt their receipt coupled with that of the improperly received newspaper advertisements and other evidence of a lack of warning of the dangerous potentialities of the lawn mower cumulatively constituted prejudicial error incapable of cure by any charge.

Reversed and remanded for a new trial.

EDWARDS, Circuit Judge (dissenting).

The undisputed facts indicate that this then seven-year-old plaintiff lost his left eye when a piece of copper wire penetrated it while he was operating a power lawn mower. Plaintiff testified that at the time he was "pushing" the mower and that it stopped immediately afterward. Since wire similar to that found in the boy's eye was found wrapped around the mower blade after the accident, the jury was certainly entitled to infer that the fragment which put out plaintiff's eye came from the mower.

Defendants admit that they designed, manufactured and sold the particular lawn mower involved.

Plaintiff's evidence showed that the placement of the discharge chute on the mower and the length of the mower blade made it possible for an object thrown therefrom to be thrown rearward toward the operator's position so as to pass within nine inches of the right end of the operator's handle.

On this record it was certainly permissible for the jury to infer that defendants knew, or in the exercise of reasonable care should have known, of this dangerous condition and that plaintiff did not.

Plaintiff pled negligent design of the mower. Plaintiff also pled and at the trial offered evidence to prove defendants' knowledge of and failure to warn mower users and purchasers of this hazardous condition at any time prior to the happening of this accident.

This case is a diversity case tried under Michigan law. Under Michigan law a manufacturer of a dangerous instrumentality has a continuing duty to take "all reasonable means to convey effective warning" of a latent defect in a product where the manufacturer has knowledge of the defect but the users do not. This duty continues even after the product has

been sold and put in use. Comstock v. General Motors Corp., 358 Mich. 163, 176, 99 N.W.2d 627, 78 A.L.R.2d 449 (1959).

The appellate issue of substance is appellant's claim that the trial judge's receipt in evidence of a set of standards issued by the American Standards Association applicable to lawn mower design represented prejudicial error. The standards as actually approved were approved and printed after this lawn mower was sold but before the injury involved here. These facts were fully developed before the jury, as was a good deal of evidence about the processes by which these standards were prepared and the opportunities which the defendants had to become familiar with them during their formative stages.

The mower in dispute was designed in 1957. This particular mower was sold June 11, 1959. The injury occurred June 18, 1962.

The A.S.A. project for safety Specifications for Power Lawn Mowers B71.1 was approved March 15, 1955. On the same date A.S.A. confirmed the initiation of this project to Newark Stove Company—a wholly-owned subsidiary of defendant Sears, Roebuck & Co.

On April 4, 1955, Newark Stove Company wrote A.S.A. expressing their "extreme interest" in the proposed safety code.

Subsequently, on January 19, 1956, A.S.A. invited Newark Stove Company to attend the first meeting, but Newark did not attend. Such invitations were repeated and declined by Newark.

On May 20, 1958, the relevant safety standards which would have corrected the hazardous design of the subject mower were drafted. They were approved without material change by A.S.A. June 23, 1960.

Defendants deny seeing the standards in draft form. But the standards were widely published after the date of sale of this lawn mower—but well before the date of plaintiff's injury.

The District Judge actually charged in effect that the jury could not employ the A.S.A. standards as ultimately approved in determining whether or not failure to comply with them was evidence of negligent design, in view of the fact that the approval followed rather than preceded the manufacture of the offending instrumentality. Appellants, of course, claim that this instruction did not succeed in curing the error of allowing the standards to be placed before the jury at all.

Under Comstock v. General Motors, 358 Mich. 163, 99 N.W.2d 627, 78 A.L.R.2d 449 (1959), the failure of a manufacturer to take all reasonable means to warn users of a product of a latent defect in that product which renders it a dangerous instrumentality is evidence from which a jury may infer negligence:

"Buick division subsequently learned in fact that they had built thousands of power brakes with a defective part. The facts pertaining to furnishing of replacement kits and assumption of costs allow no other inference than that defendant had ample warning of a serious problem concerning the 1953 Buick power brakes well before the brakes involved here failed.

"Defendant's Buick division warned its dealers. It did not warn those into whose hands they had placed this dangerous instrument, and whose lives (along with the lives of others) depended upon defective brakes which might fail without notice.

"In our view, the facts in this case imposed a duty on defendant to take all reasonable means to convey effective warning to those who had purchased 1953 Buicks with power brakes when the latent defect was discovered.

"The duty to warn of known danger inherent in a product, or in its contemplated use, has long been a part of the manufacturer's liability doctrine. Clement v. Crosby & Co., 148 Mich. 293, 111 N.W. 745, 10 L.R.A., N.S., 588; [12 Ann.Cas. 265]; Gerkin v. Brown & Sehler Co., 177 Mich. 45, 143 N.W. 48, 48 L.R.A.,N.S., 224 [4

N.C.C.A. 254]; Lovejoy v. Minneapolis-Moline Power Implement Co., 248 Minn. 319, 79 N.W.2d 688; Hopkins v. E. I. Du Pont De Nemours & Co. (C.C.A. 3), 199 F.2d 930; Tomao v. A. P. DeSanno & Son, Inc., (C.C.A. 3), 209 F.2d 544; Haberly v. Reardon Company, (Mo.), 319 S.W.2d 859.

"See, also, Annotation, Duty of manufacturer or seller to warn of latent dangers incident to article as a class, as distinguished from duty with respect to defects in particular article, 86 A.L.R. 947.

"In the *Gerkin Case,* this Court said (177 Mich. p. 60, 143 N.W. p. 53):

" 'When the fact is once established and demonstrated by experience that a certain commodity apparently harmless contains concealed dangers, and when distributed to the public through the channels of trade and used for the purposes for which it was made and sold is sure to cause suffering to, and injure the health of, some innocent purchaser, even though the percentage of those injured be not large, a duty arises to and a responsibility rests upon the manufacturer and dealer with knowledge to the extent, at least, of warning the ignorant consumer or user of the existence of the hidden danger. Failing to do so, the dealer, as well as the manufacturer, who has the knowledge and does not impart it, is liable to a subsequent, ignorant purchaser, reasonably within contemplation of the parties to the original sale, for injuries sustained through such hidden dangers. This is by reason of the duty the dealer owes to the public generally, which includes all whom it may concern, to give notice of any concealed dangers in the commodity in which he traffics, and to exercise a reasonable precaution for the protection of others commensurate with the peril involved. We think this principle applicable to the case at bar and fairly deducible from the many authorities touching manufacture and sale of dangerous commodities. Thornton v. Dow, 60

Wash. 622 (111 P. 899, 32 L.R.A.,N.S., 968), and authorities cited and reviewed in Tomlinson v. Armour & Co., 75 N.J.L. 748, 70 A. 314, 19 L.R.A., N.S., 923.'

"If such duty to warn of a known danger exists at point of sale, we believe a like duty to give prompt warning exists when a latent defect which makes the product hazardous to life becomes known to the manufacturer shortly after the product has been put on the market. This, General Motors did not do." Comstock v. General Motors Corp., 358 Mich. 163, 176–178, 99 N.W.2d 627, 634 (1959).

The *Comstock* case was decided by a unanimous Michigan Supreme Court. It has been the subject of an annotation in American Law Reports. See 78 A.L.R.2d 449 (1961). It has never been overruled.

Nor is its doctrine strange to Michigan. In an annotation entitled *Products Liability—Duty to Warn,* wherein *Comstock* is cited as Michigan authority, we find this statement:

"That the duty of ordinary or reasonable care which lies at the foundation of the law of negligence commonly comprehends a duty to warn of danger, the nonperformance of which will, when it is the cause of injury, give rise to liability is, of course, a legal truism. There is not a case falling within the scope of this annotation which in any way contradicts this principle." 76 A. L.R.2d 16 (1961). (Footnotes omitted).

Defendants in this case concede that they gave no warning at all at any time.

Under the *Comstock* doctrine just set forth, it appears to me that the industry safety standards set by A.S.A. were admissible in evidence where those standards were published well in advance of plaintiff's injury.

In addition, in view of the strong evidence of gross negligence in design of this mower and the trial judge's restrictive instruction as to the use the jury could make of the evidence pertaining

to the A.S.A. standards, I believe there was no prejudicial error in this trial which adversely affected substantial justice.  Fed.R.Civ.P. 61.

I would affirm the jury verdict.